Foster et al. v. Davis.

THOMAS M. FOSTER *et al.*, Defendants in Error, *v.* JAMES A. DAVIS, Plaintiff in Error.

1. *Trustee, larceny from, should appear as clearly as the case will admit of.* — Where a party standing in a fiduciary relation undertakes to discharge himself from responsibility for trust funds committed to his care, on the ground that such trust funds have been stolen from him, the fact of the loss, in the manner asserted, should be made to appear as clearly as the case will admit.

*Error to Second District Court.*

*Draffen & Muir,* with whom were *Burke & Howard,* for plaintiff in error.

*Ewing & Smith,* for defendants in error.

CURRIER, Judge, delivered the opinion of the court.

This is a proceeding in equity to open and readjust the account of the defendant as executor of the will of Williamson Foster, deceased. It is conceded that the facts alleged in the petition, if proved, will justify the relief prayed for. The contest is narrowed down to three items of credit which were allowed to the defendant on the final settlement of his administration account— one being for an uncollected note of $11.06, one for an uncollected note of $250, and one being for money claimed to have been stolen from the defendant, amounting to the sum of $800. It is charged that these credits were fraudulently procured. Whether so, or not, is the question for decision. The issue is one of fact, and the proofs must determine it.

It is not considered that a labored review of the evidence would

answer any useful purpose. I shall, therefore, in the main, content myself with stating results. I have examined the evidence carefully, and fail to find proofs of fraud in relation to the notes which would justify the opening of the account for re-examination, because of anything done by the defendant in procuring their allowance as credits. The credit of $800 stands on a different footing. The sum of $800 was credited to the defendant, upon his representations to the Probate Court to the effect that funds of the State to that amount had been stolen from him — that he had been robbed. If these representations were false, it is conceded that the account should be reformed. The fact of the robbery is not controverted; but the question is, was the defendant robbed of his own money, or was the robbery of funds belonging to the decedent's estate?

On the 10th of March, 1864, armed men in disguise entered the defendant's dwelling-house and rummaged it for plunder. A quantity of money was found concealed in a straw bed, which the robbers seized and carried away. The defendant testifies that no part of the money was his; that at that time he had no money; that $800 of the money taken belonged to Foster's estate; that it was not the identical money which he had collected for the estate, but United States currency which he had taken in exchange for Missouri bank bills, and which he esteemed, as he testified, a better security; that $750, of the $800 taken by the robbers, was in the currency of the United States. He also testified that he had kept funds of the estate on hand from 1861 to the date of the robbery. It also appeared that he had represented, prior to the robbery, that he kept the funds of the estate buried where they could not be found, being induced to adopt this precaution on account of prevalent civil disorder.

It should be observed that where a party standing in a fiduciary relation undertakes to discharge himself from responsibility for trust funds committed to his care, on the ground that such funds have been stolen from him, the fact of the loss in the manner asserted should be made to appear as clearly as the nature of the case will admit. Such is not the showing here. The loss is claimed to have occurred at a time and in a community where and

when violence and lawlessness were prevalent. Under such circumstances, why was so large an amount of money belonging to the estate withdrawn from its place of safe deposit in the ground and put at risk in the defendant's house? Or, if the $800 had accumulated in any part from late collections, why were these collections not deposited with the other funds of the estate? It is evident from the defendant's account that there were other funds. These questions are not answered, although it is suggested that the money was wanted to pay taxes. There is no evidence that the estate owed taxes to the amount of $800, or to an amount reaching anywhere in the vicinity of that sum. The defendant had ample funds for the purpose of paying taxes, and his account shows that he paid taxes to the amount of $65.15. It is not shown that there were any other taxes against the estate.

As already observed, it appeared in evidence that the defendant, prior to the robbery, represented that the funds of the estate were kept safely buried. A member of his family, called by him as a witness, testified that the money stolen had been concealed in the house for three or four months next prior to the robbery, and that the money stolen was mainly "militia money," and not "greenbacks." The witness had every means of knowledge, and was positive as to the kind of money taken, describing the color of it as lighter than that of the greenback currency.

Had the defendant acted in good faith in this matter, and under the belief that the money taken was the property of the estate, it is quite incredible that he could have failed in some reasonable time to have notified the parties in interest of the fact of the loss. There is no pretense that he did so. On the contrary, it appears that he informed various persons that the money taken was his, making no mention of the estate in that connection. The defendant's claim is alone supported by his own swearing, and by testimony coming from members of his family, and that testimony is found to be, in some respects, in striking and most emphatic conflict. All the facts and circumstances of the case combine to oppose the theory upon which this defense is sought to be sustained. Upon a careful review of the evidence

preserved in the record, I am compelled to adopt the conclusion that the money taken by the robbers did not constitute any part of the assets of Foster's estate.

As already stated, the action of the court in disallowing the credits for the two uncollected notes was erroneous, and for that reason the judgment must be reversed; but there is no necessity for remanding the cause. The record shows that the parties prosecuting this suit are entitled to the avails of it. It also appears that Foster's estate has been fully settled, leaving nothing further for the executor to do. This court will therefore proceed to enter such judgment as the Circuit Court ought to have rendered. The plaintiff will take judgment here for the sum of $800, together with the interest thereon since the date of the defendant's final settlement, making the aggregate sum of $1,076.

Since the defendant was aggrieved by the judgment of the Circuit Court, he will recover his costs in this court. The other judges concur.