LOUIS G. PICOT, ADMINISTRATOR OF ANN DILLON, Respondent, *v.* BARTON BATES *et al.*, Appellants.

*Administration — Final settlement has the force of a judgment.*— An administrator's final settlement must bind the estate with the force of a judgment unless it can be impeached for fraud.

*Appeal from St. Louis Circuit Court.*

*C. C. Whittelsey*, for respondent.

*A. W. Alexander*, for appellants.

BLISS, Judge, delivered the opinion of the court.

This case has heretofore been before this court, and is reported in 39 Mo. 292.  All the preliminary questions raised by defendants were there decided, and we have only now to consider the question of fraud as charged in the petition.

P. M. Dillon, deceased, was administrator of the estate of his deceased wife, and, as such, in 1845 made his final settlement, in which he charged himself with $2,768.49, as received from the estate of John T. Nash, upon a claim in favor of his said wife.  The account shows sundry credits, the first of which are $2,301.20 debt and $1,116.09 interest, entered as follows : "By amount of my demand allowed by the court against the estate of John Nash, deceased, on the 16th of November, 1837."  This amount and interest contained no reference to a voucher, but the subsequent items all referred to vouchers in regular order.  The record entry shows that the account came under the special cognizance of the court, that the debits amounted to $2,768.49 and the credits to $3,650.22.  Ann E. Dillon, deceased, was one of the daughters of Ann T. Dillon, and entitled to one-third of her estate, which her administrator now seeks to recover from the heirs of P. M. Dillon, charging fraud in the settlement.

This settlement, so far as the orders of the court are concerned, appears to have been regular, and it must bind the estate with the force of a judgment unless it can be impeached by fraud.  (Jones v. Brinker, 20 Mo. 87 ; State v. Rowland, 23 Mo. 98.)  The plaintiff claims that he has established his charge from the face of the account in connection with evidence ; that the record fails to show any such allowance of a demand of $2,301.20 against the estate of John T. Nash.

Judging merely from the evidence now before us, and assuming that there was no more at the time of the approval of the account, it is clear that the credit should not have been allowed. The record shows no allowance of any claim against the Nash estate except the one with which the administrator is charged, and if it were allowed it does not appear how he could be credited with it.  The account looks very much as though the administra-

tor had charged himself with a matter and then credited himself with the same thing as a set-off; and if it had not been once judicially passed upon and approved, we might so find. Or, if all the evidence submitted to the Probate Court were now before us, and the matter was not explained, we might say that the court was imposed upon by a fictitious credit. We are wholly in the dark as to how this credit came to be allowed by the court; and yet it is impossible to say that evidence could not have been submitted that would authorize its allowance. The fact that it can not now be explained does not necessarily show that it was not then. The receipts and accounts submitted give us hints as to possibilities.

The claim of P. M. Dillon, as administrator against the estate of Nash, was for the purchase money of land sold by Nash to Mrs. Dillon, and due her in consequence of a failure of title. The deed to her was dated November 15, 1837, one day before the date of the demand credited to Dillon. We may conjecture that the two things had some legitimate connection, which was known at the time but can not be now. Also, we find that the account of Nash's administrator contains a charge to him of $2,759.50 for cash received of Dillon upon purchase of real estate, and a credit of the same amount paid him upon said claim of Mrs. Dillon. This account does not of itself explain the difficulty, but if we had the explanations of the men then living, which were doubtless submitted to the Probate Court, it might make the matter very plain. The credit has a bad appearance, and looks as though it were wholly fictitious; yet it is evident that it was specifically considered by the court, and for some reason was allowed. More than ten years elapsed before the matter was first looked up by those interested, and it was their fault if, by lapse of time, it had become impossible to explain the transaction; and courts will never assume fraud from mere obscurity or apparent error.

The plaintiff has failed to establish affirmatively any fraudulent act or contrivances of Dillon, and has failed to exhibit all the evidence submitted to the Probate Court, so that we might be advised as to the ground of its action in allowing the suspicious-

looking claim; whether the allowance was rightful or erroneous merely, or whether the court was imposed upon by the fraudulent acts of Dillon. The judgment must therefore be reversed and the cause remanded, that the petition, if the plaintiff has no more evidence, may be dismissed. The other judges concur.

On motion for rehearing, the court delivered the following opinion:

The plaintiff asks for a rehearing upon the ground of a mistake in the opinion in the date of the deed from Nash to Mrs. Dillon, caused by an incorrect minute in the record. The correct date does not affect the case, the conclusion of law not being drawn from it. It is difficult to resist the conviction that there was fraud or mistake in the settlement complained of. Without extrinsic explanation, the error is so very obvious as to lose one of the badges of fraud. At this day the matter can not be explained. But more than twenty years have elapsed, and we are called on to say that a judgment regularly entered and long acquiesced in shall be impeached for fraud because merely the consistency of the account adjudged can not now be shown. It would never do to adopt such a practice.

The motion is overruled. The other judges concur.