THOMAS J. CLYCE, Plaintiff in Error, v. GUSTAVUS A. ANDERSON, EXECUTOR OF ESTATE OF REBECCA GRISWOLD, Defendant in Error.

1. *Administration — Final settlement — Approval, effect of.* — Final settlements of executors, administrators and guardians, when regularly approved, have the force of judgments, and can only be attacked for fraud; but such fraud may be positive and actual, with intent to cheat and wrong those interested, or may consist in any improper act or concealment which operates as a fraud and results in loss, whatever the motive.

2. *Administrator's final settlement — Inventory — Bill of sale — Interest on discretionary, when.* — Executors and administrators are not to be charged with interest upon the inventory and sale bill of the trust estate, as of course. Where interest has not been actually collected, it is matter of discretion with the Probate Court whether to charge those officers with it or not; and in proceedings to set aside final settlements by them on the ground of fraud, this court will not review such discretionary action by the Probate Court.

*Error to Warren Circuit Court.*

*Rosenburg & Diggs*, and *A. H. Buckner*, for plaintiff in error.

I. An administrator's or guardian's settlement may be set aside in equity, for fraud in the administration or devastavit by him. It is not necessary, as assumed by the court in Picot v. Bates, 43 Mo. 391, that an actual fraud should be proved. It is enough that the administrator shall have been guilty of any acts, omissions

or concealments by which plaintiffs have been injured. (Sto. Eq. Pl., § 187.) It is the difference between fraud in law and fraud in fact. Any other view of the law makes these settlements of the Probate Court an immunity and protection to dishonest administrators, and license to them to defraud their estates. (4 Burnes' Eccl. Law, 603; Young v. Shelton, 3 Hagg. 782; Toll. Ex'rs, 494; Anderson v. Fox, 2 H. & M., Va., 245; 7 Yerg. 174; 4 Black, 115; 2 Black, 343.)

II. Defendant's attempt to cover up his fraud and failure to do his duty as executor, by proof of robbery, is nothing but an afterthought. In the final settlement nothing is said of this robbery. The plaintiffs never had intimation of such loss when this suit was instituted. The only evidence that defendant was robbed of any money belonging to this estate is his own. He says the money stolen was collected during the spring before the robbery. The defendant ought to have shown some book or memorandum stating when and from whom this money was collected. (Clark v. Henry, 9 Mo. 339; Oldham v. Trimble, 15 Mo. 226; Erwin v. Henry, 5 Mo. 469; Tourville v. Roland, 23 Mo. 98; Jones v. Brinker, 20 Mo. 87; Mitchell v. Williams, 27 Mo. 399; Strong v. Wilkeson, 14 Mo. 118.)

*Henderson & Dyer, Orrick & Emmons*, and *L. J. Dryden*, for defendant in error.

I. Although the distinctions between law and equity have been abolished, a party seeking to falsify the accounts and allowances of administrators must petition the District Court as a court of law and equity, and allege the same grounds now for the action and interference of the court as were formerly necessary to give the court of chancery jurisdiction. It has never been held that charging merely that the administrator had obtained illegal allowance in his favor in his settlements was ground for applying to the chancery court to have such allowance set aside and vacated, but he must charge that the allowances were procured by fraudulent and false means and pretenses, to the injury of the estate and parties interested. (Jones v. Brinker, 20 Mo. 88; State, to use of Tourville, v.

Roland, 23 Mo. 98 ; Whittelsey v. Dorsett, 23 Mo. 236 ; Sullivan County v. Burgess, 37 Mo. 300 ; Picot v. Biddle, 35 Mo. 41 ; Mitchell v. Williams, 27 Mo. 400.) And the reason for this is obvious. All final settlements of executors and administrators are made upon proof of due notice given by publication to all parties interested in the estate, thus affording every person interested in such estate an opportunity to appear and resist any illegal or improper allowance or statement of account upon such final settlement, or any previous settlement; and the aggrieved party has the right of appeal during the term of the Probate Court at which the final settlement is made, and for ten days thereafter. In default of such appearance and appeal, the judgment of the Probate Court must be binding and conclusive, except in cases where such settlements and judgments have been procured by false and fraudulent pretenses made by the executor with intent to cheat and defraud. Otherwise the notice required by law to be given by executors and administrators of their intention to make final settlements, would be nugatory and without purpose or effect.

. II. The law and the courts presume that courts having probate jurisdiction perform their whole duty in this regard, and courts will not interfere and set aside settlements which bind the estate with the force of judgments, unless impeached for fraud. Courts will not impute fraud to every allowance and settlement which cannot be satisfactorily explained. (Picot, Adm'r of Dillon, v. Bates, 47 Mo. 391.)

III. Whether interest shall be charged is a matter of discretion with the court; that discretion the Probate Court exercised. Superior courts never interfere with the discretion of a lower court. The evidence upon which the lower court acted, and by which it was influenced in its actions, is not before this court. (Madden v. Madden, 29 Mo. 544.)

IV. It appears that defendant lost by robbery about $5,500 of money belonging to the estate. In case the account should be reopened, he would be entitled to a credit for that. (Townshend, Adm'r, v. Meagher, 44 Mo. 356-7.)

BLISS, Judge, delivered the opinion of the court.

Rebecca Griswold bequeathed and devised all her property to her nieces, daughters of defendant Anderson, the executor, and this suit is brought by said daughters and their husbands to set aside the final settlement of the executor upon the ground of fraud. The answer admits mistakes and errors in the settlement, but denies fraud, and claims that had it been correctly made, the balance in favor of plaintiff would not have materially differed from the one found. The defendant also claims the protection of the approval of said final settlement by the Probate Court as a judgment, which cannot be impeached unless shown to have been obtained by fraudulent arts and contrivances.

That final settlements of executors, administrators and guardians, when regularly approved, have the force of judgments, and can only be attacked for fraud, has always been the settled law in Missouri. But difficulties arise in attempting to distinguish between fraud and mere error, and no general definition that shall embrace all cases that are reviewable in a court of equity can be given. Lord Hardwicke, as quoted by Judge Story in his Equity Jurisprudence, section 186, note, says: "Fraud is infinite, and were a court of equity once to lay down rules how far they would go, and no farther, in extending their relief against it, or to define strictly the species or evidence of it, the jurisdiction would be cramped and perpetually eluded by new schemes which the fertility of man's invention would contrive." And while disapproving of a quoted definition as not including the larger class of implied or constructive frauds which are within the universal jurisdiction of a court of equity, and not attempting a complete definition, Story himself says in section 187 that fraud, "in the sense of a court of equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly imposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another."

In considering the liability of final settlements to be reviewed and impeached, judges of this court have used language that

sometimes renders it doubtful whether they supposed that in order to give the court jurisdiction the fraud should be positive and actual, with intent to cheat and wrong those interested in the estate, or whether any improper act or concealment will suffice that operates a fraud and results in loss, whatsoever the motive. Yet, from an examination of all the cases, I am satisfied that this court never intended to confine the relief to the former class of cases. I am certain such was not its intention in Picot v. Bates, 47 Mo. 390; and in several cases settlements have been set aside where it did not affirmatively appear that there had been a deliberate design to cheat.

Courts will scrutinize more closely an *ex parte* judgment—and especially when the person obtaining it holds a fiduciary relation to those affected by it — than one obtained by litigation between equals. Administrators, etc., are trustees; they alone are supposed to be thoroughly advised in regard to the trust funds; their exhibits must necessarily be greatly relied upon by those interested in the fund; their settlements are often practically *ex parte*, with no one to scrutinize their accounts but the Probate Courts, which are easily deceived, and which, unfortunately, are often negligent, and trust too much to the good faith and intelligence of the administrator. With such opportunities for overcharging, suppression and concealment, and with the fiduciary and trust relations held by them, administrators, executors and guardians are under peculiar obligations to see to the accuracy of their accounts, and that judgment of approval is not based upon any wrong showing of theirs. While those interested in the estate to be settled may appear and contest the settlement account, still the trustee none the less represents the estate as well as himself, and cannot throw off his trust relation by giving notice that he will close it up. Under these circumstances any omission or concealment that wrongs the estate must be considered as fraudulent, without reference to the motive that dictates it. We are often deceived by the same word in different associations and relations. A judgment is usually the result of a contest between parties when neither are under legal obligations to make greater disclosures than their interest requires. In such a case

it may be no fraud to neglect to communicate facts that would materially affect the result. But in a settlement like the one under consideration nothing can be innocently concealed, and in applying the term "judgment" to the approval of such a settlement we should not overlook its different character and the different relations of those interested in it.

The obligations of the defendant to all interested in the estate arising from the fact that he was executor, are greatly increased, so far as the plaintiffs are concerned, from the fact that he was their father, that both were young, and at the time of settlement one was a minor, and he was not only her natural guardian, but had given bonds as curator of her estate. It was, therefore, doubly his duty to see that their rights were guarded.

The plaintiffs first charge the executor with fraudulently obtaining a credit of $1,446.50, by giving up to the maker without collection a promissory note inventoried at that amount. It appears that the note was given to the testatrix by one Fischer, her nephew, for borrowed money, and there was evidence tending to show that she intended the amount as a gift to him, except in a contingency, which did not happen. The executor surrendered the note by order of the Probate Court, and was credited with its amount. Without considering the authority of the court to make the order, or the propriety of the act, the evidence shows that the executor acted openly and in good faith, carried out what he had reason to suppose was the design of the testatrix, and there was no fraud in obtaining a credit for the amount.

Second, the testatrix left a farm which was rented out by the executor, and he failed to charge himself with some $1,500 of the rent received. It appears that the eldest daughter of Mrs. Clyce had been educated at the expense of her aunt, the testatrix, while living, and that she verbally enjoined upon the executor to educate the youngest daughter out of her estate. The will, however, made this provision for her education, to-wit: That Rebecca (Mrs. Clyce) should have the use of the home farm and slaves bequeathed to both until her sister should marry or arrive at age, Rebecca being required to support her in a handsome manner, and to educate and clothe her suitably. Rebecca failed

to occupy the farm and to support and educate her sister, and the executor construed the will as appropriating the use of the farm to that end. He accordingly used the rents for that purpose, and failed to charge himself with them as executor. It is not material to inquire in this proceeding into the precise accuracy of his account or the regularity of his action; it was taken in good faith, and there was enough in the will to relieve him from any charge of fraud in the premises.

Third, the executor is charged with fraud in the matter of interest—first, in not crediting the estate with interest upon his inventory and sale bill; and, second, in charging to the estate interest never paid. It is obvious that interest must have been collected not accounted for, inasmuch as the sale bill was over $3,000 and the inventory over $14,000, and all the interest credited the estate is an item of $215 in the second annual settlement. On the other hand, the executor has charged the estate with $2,682.83 interest on uncollected claims, and $426.50 interest on distributions. He admits these charges to be improper, but exonerates himself from actual fraud by saying that the account was drawn up by his attorney in his absence. But the act must be treated as his own; it is a fraud upon the legatees, and the negligence of the court was taken advantage of by charges wholly fictitious. I think, therefore, that so much of the account as pertains to interest should be set aside.

Executors and administrators are not to be charged with interest upon the inventory and sale bill, as of course. Where interest has not been actually collected, it is a matter of discretion with the Probate Court whether to charge them with it or not; and in a proceeding of this kind we cannot review its discretionary action when action is had. (Madden v. Madden, 27 Mo. 544.) Interest collected upon warrants due the estate, over and above what is inventoried, and interest upon sales when credit is given, must be accounted for; and any suppression or concealment of the amount received is a fraud upon the estate. The executor or administrator should render an account in detail of all that is thus received, but whether he should be charged with anything more must depend upon circumstances. If he has invested money

at a profit, that profit belongs to the estate. If he suffers money to lie in his hands when distribution should be made, interest is properly chargeable; and other circumstances may exist where, in justice to the estate, courts of probate should require him to pay interest upon collections.

The account under consideration leaves us utterly in the dark, as to the amount that should be charged the executor. A gross sum is put down as " whole amount of interest collected," much smaller than the amount charged the estate, and less than what apparently must have been collected. We are unable, therefore, from the record to readjust the interest account.

The executor charges nothing for his commissions or expenses of administration. To those he is entitled, and in readjusting his interest account credit should be given him for their amount. It might be too late for him now to make it as a new claim, but an examination of the record satisfies me that the irregularities of the executor, as well as his omissions, false charges, and, in effect, concealments, resulted more from a loose way of doing business than from fraudulent design, and that he perhaps supposed he was entitled to the interest for his services. I am, therefore, of opinion that he should be still permitted to put in his claim for commissions and expenses.

In regard to another claim which he presents in case the account shall be opened, I am in greater doubt. He shows a robbery of his store and that his safe was opened. He testifies that there was in his safe at the time a bundle of money belonging to the estate, which was taken by the robbers. He thinks it was about $5,500, but does not know the amount, and says it may have been only $3,000 or $4,000. At best, a loss of funds by a trustee is always looked upon with suspicion, and a clear case must be made before the loss can be charged to the *cestui que trust.* This loss has no connection with the interest account, has never been charged to the estate, and I think it is too late now to bring it in.

The judgment of the Circuit Court dismissing the petition will be reversed, so much of the settlement accounts as pertain to interest will be set aside, and the cause will be remanded, with

directions to make so far a new settlement, and in said settlement the executor will be permitted to charge the estate his lawful commissions and just expenses not heretofore charged.

Judge Currier concurs. Judge Wagner absent.