———o———

IN THE MATTER OF THE ESTATE OF ABEL K. MERRITT, Respondent, *vs.* GEORGE MERRITT, Appellant.

1. *Administrator—Misapplication of assets—Action by creditors for sale of real estate, etc.—Remedy on the bond, when.*—Where the administrator has been guilty of malversation and misappropriation of the assets, and upon a proper accounting, enough would be found in his hands to pay the debts of the estate, the creditors are not entitled to a sale of the real estate in the first instance, in order to satisfy their claims. (Wagn. Stat., 97, § 25.) If the personal estate becomes insufficient to pay the debts in consequence of *devastavit*, or the administrator's neglect of duty, the remedy primarily is on his bond.

2. *Executor carrying on trade of testator—Responsibility for losses, rule as to.*—When the executor carries on the trade of the testator under provisions contained in articles of co-partnership, or directions in the will, or a decree of the Chancellor, he is accountable for the profits realized, but not for losses. But where he adventures the fund in business of his own, or of others, distinct from the management of the estate, from which he expects to derive a benefit beyond the legal rates of interest, he must make the fund good for all losses with at least lawful interest, or, if a greater rate be received, he must also account for that.

3. *Administrators—Measure of responsibility for the investment of funds.*—The now prevailing rule is, that executors and administrators stand in the position of trustees for those interested in the estates upon which they administer, and in the investment of funds, are liable only for want of due care and skill, *i. e.*, such as prudent men exercise in the management of their own affairs.

4. *Administration— Widow left as administratrix in charge of a hotel of her deceased husband—Case stated—Measure of responsibility.*—A testator left half his estate to his widow who was also his administratrix, and it included a hotel, furnished and in operation, which she could not dispose of, except at great sacrifice until the lapse of a year or more. It appeared that she acted throughout without an order of the probate court, but in the most entire good faith. *Held,* that she was not interested in a speculation of her own, but only endeavoring to preserve and take care of the effects till they could be sold to advantage ; that the accruing rent paid by her was a charge on the estate, and she was entitled to a credit for it ; that she should be charged with whatever rents and profits were derived from it, and, generally, should be governed by that measure of responsibility affecting trustees in the administration of their trusts.

### *Appeal from St. Louis Circuit Court.*

### *T. E. Ralston for Stewart & Ralston,* for Appellant.

I. The heirs and devisees had a right to appear, and by showing a waste or misapplication, or improper and illegal charges and credits on the part of the administratrix in amount equal to the claims proven up, prevent a sale of the real estate until the creditors had exhausted all legal remedies against the executor or administrator and his bondsmen. (Rorer Jud. Sales, § 264 ; Turner vs. Ellis, 24 Miss., 173–79 ; Paine vs. Pendleton, 32 Miss., 320 ; 40 Miss., 643–4 ; Holman vs. Bennett, 44 Miss., 322 ; 42 Miss., 465 ; Pierce vs. Calhoun, 59 Mo., 271 ; 2 Bradf. [N. Y.], 122, 127 & 129 ; Wood vs. Stone, 16 Ill., 177 ; Callaghan vs. Griswold, 9 Mo. 785, 792–3 ; Farrar vs. Dean, 24 Mo., 16, 18, 19 ; Wagn. Stat., 1870, p. 96, § 25.)

II. The administratrix having carried on the hotel and bar room for over a year in her own name, and for her own purposes, without any order of court, or authority given by the will, was guilty of waste and mismanagement of the funds and property of the estate and is responsible personally and on her bond, for all losses sustained and expenses incurred. (3 Redf. Wills, pp. 257, 319, 402; 2 Will. Ex'rs, pp. 1076, 1527; Toll. Ex'rs, 487; Baker vs. Parker, 1st T. R., 295; Booth vs. Booth, 1 Beav., 125; 3 Lead. Cas. Eq., 455; Piety vs. Stace, 4 Ves.. Jr., 620, 621; Ducker vs. Somes, 2 Ves. & K., 655, 664–5–7–8 & 672; Kirkman vs. Booth, 11 Beav., 280; Griffin vs. Blaine, 43 Ala., 542; Collins vs. Lester, 20 Beav., 365; Henderson vs. Inches, 2 Allen [Mass.], 71.)

*Geo. P. Strong*, for Appellant.

I. If there has been a waste, or impropor use of the funds or personal property by the administrator, the creditors are not therefore to have an order of sale of the real estate; they must proceed against the administrator and his securities. (Roh. Jud. Sales, 102, § 264; Turner vs. Ellis, 24 Miss., 178; Stone vs. Wood, 16 Ill., 177; Paine vs. Pendleton, 32 Miss., 322; Holman vs. Bennett, 44 Miss., 331; 3 Redf. Wills, 133; Cooper vs. Armstrong, 3 Kans., 78.)

Where an executor, or administrator, or trustee uses the trust funds or property in business of his own, on his own responsibility, he must bear all losses and account for all profits.

If he uses the trust property by order of the probate court, he must account for all profits, but is not charged with losses, if he acts in good faith. Good faith will shield from losses if he acts under lawful authority, but not when he acts without authority. (3 Redf. Wills, 402, par. 10, § 48; Piety vs. Stace, 4 Ves. Jr., 620: Barney vs. Saunders, 16 How. [S. C.], 535, 543; 2 Will., Ex'rs, 1566, 1567, and cas. cit.; Glenn vs. Glenn, 41 Ala., 589; De Jarnette vs. De Jarnette, 41 Ala., 710; Palmer et als., Appeals, 1 Doug. [Mich.], 428; Commonwealth vs. McAllister, 28 Penn. St., 484–5; Id., 30

Merritt v. Merritt.

Penn. St., 536; In the matter of Stafford, 11 Barb., 354–5; Conger vs. Ring, 11 Barb., 361–2; Utica Ins. Co. vs. Lynch, 11 Paige, 520; Robinson vs. Robinson, 11 Beav., 371, 380; Urtes vs. Graham, 2 Drew, 271; 3 Lead. Cas. Eq., 452; Wagn. Stat., 1872, p. 88, §§ 38, 39, 41, 44; Id., p. 90, § 52.)

*A. M. Gardner & Polk, with Causey*, for Respondents.

Although the action of the administratrix may not have been strictly and technically legal, yet she acted in perfect good faith, and for the best interest of the estate.

She was governed by the measure of responsibility affecting trustees. She certainly exercised the same care as persons of ordinary prudence and diligence would bestow on their own affairs, and therefore not liable as charged. (Fudge vs. Dunn, 51 Mo., 264; Clyce vs. Anderson, 49 Mo., 37; Foster vs. Davis, 46 Mo., 248; Byrd vs. Governor, 2 Mo., 102; State ex rel. vs. Meagher, 44 Mo., 356; Smith vs. Paris, 53 Mo., 274.)

WAGNER, Judge, delivered the opinion of the court.

The creditors of the estate of A. S. Merritt, deceased, presented their petition to the probate court, praying for the sale of real estate sufficient to satisfy their claims. An order was granted in accordance with their request, and the defendant, who had an interest in the estate as a devisee, under the will of the decedent, appealed. In the circuit court the case was heard anew, and the judgment of the probate court was affirmed, and the defendant has prosecuted his appeal to this court.

The ground of resistance to the order of sale is, that the administratrix having the estate in charge, was guilty of malversation, and misappropriation of the assets, and that if she was compelled to properly account, there would be sufficient personal assets to pay the debts without resorting to a sale of the realty. It is insisted here that the creditors have no concern in regard to the improper conduct or acts of the administratrix, and that they have a right to have the real es-

tate sold in satisfaction of their demands, and that the recourse of those who are interested in the realty, would be exclusively over against the administratrix, and the sureties on her bond. But this ground is not tenable. The statute provides, that, upon proof of publication, the court shall hear the testimony, and may, if necessary, examine all parties on oath, touching the application, and make an order for the sale of such real estate or any part thereof. (Wagn. Stat., 97, § 26.) By our law, the personalty is primarily the property out of which to pay the debts owing by the estate. When that proves insufficient, then, upon proper application, the real estate may be resorted to.

The issue is, whether it is necessary to apply the real estate ; and, to determine that question, the court is required to hear testimony and form its judgment upon all the facts in evidence. The only object or purpose in hearing testimony on the subject, is to ascertain whether the personal estate is sufficient to pay the debts of the estate, and if sufficient, then no sale of the land is ordered; but if not sufficient, then the court orders a sale. If the personal estate becomes insufficient to pay the debts in consequence of the *devastavit* or neglect of duty of the administratrix, the law furnishes a speedy and efficient remedy on the administration bond, which should in the first instance be pursued.

The controversy between the parties grows out of the administratrix continuing to keep the St. James Hotel after the death of her husband, without any order from the court, and which course, it is alleged, proved disastrous to the interests of the estate. It appears from the record that Merritt in his lifetime leased the St. James Hotel for seven years, at an annual rental of $12,000, to be paid in instalments of $1000 per month.

Previous to his death, he had been carrying on the business for about nine months, and in that time he had lost $8000. At his death Mrs. Merritt took out letters of administration with the will annexed, and continued the business for a little over one year, when she sold it out. This

she did without any authority or order of the court. She paid the rent, for which the estate was liable, and charged it in her settlement against the estate. She lost about $7000, which she did not charge, but submitted to the loss personally. There was a balance of $2000 dollars on the sale of furniture, which she failed to collect, and for which she obtained credit, and there were certain store rooms and a bar connected with the house which would have produced an annual rent, but with which she did not charge herself. It is now insisted that because she voluntarily assumed this business, and had no direct legal sanction for the course she pursued, she is accountable to the estate for whatever profits she made, and that, whatever loss occurred, she must submit to. The statute declares that, " if any person die, leaving horses, or other stock that require attention; crops ungathered, property so exposed as to be in danger of loss in value, or work in an unfinished state, so that the estate would suffer material loss, from the want of care and additional labor, the executor or administrator may, until the meeting of the court, procure such indispensable labor to be performed on the most reasonable terms that he can." (Wagn. Stat., 90, § 52.)

In all the instances enumerated in this section of the statute, the executor or administrator has full authority to act, and whatever he does is legalized. In other cases, if he proceeds without the direction or sanction of the court, he does so at his peril, and he will be held to a strict accountability. Where the executor carries on the trade of the testator, by provisions contained in the articles of co-partnership, or by the directions of the will, or in pursuance of the decree of a court of chancery, he is accountable for any profits realized, but not for any loss, in such cases, since he is acting according to his duty as trustee.

But it has been held, that, where the trustee adventures the trust fund in business of his own, or others, from which he expects to derive a benefit beyond the legal rates of interest; if he fails to receive any return, or even where the principal itself is lost, wholly or in part, he must make the fund

good, with lawful interest at the least, although if more than legal interest had been received, he must also have accounted for all that was received, either as interest or profit; thus making the trustee responsible for all losses, and at the same time accountable for all gains, upon the ground, that he is a volunteer, and shall therefore be held responsible to the utmost extent, in order to discourage such breaches of trust. (3 Redf. Ex'rs & Adm'rs, 2d ed., p. 402, pl. 10, and cases cited.)

An executor or administrator is regarded as a trustee, and where he wrongfully uses the trust funds in his hands for his own purposes, or embarks them in enterprises distinct from the management of the estate, expecting to realize a personal profit, nothing can be more just than the rule above announced.

The *cestui que trust* always has the right to follow the trust funds and avail himself of any gain that has been made out of them ; and if the trustee has lost by his speculations, he must submit to it as a penalty for his unauthorized and unlawful act. But where the administrator, acting prudently and in good faith for what he deems the best interests of the estate, though it afterwards turns out that he was mistaken in judgment, the rule has been to some extent modified and applied with less rigor.

In the case of Byrd vs. Governor (2 Mo., 102), it was shown that previous to the death of the intestate, he had dug and walled a cellar, and that, after his death, and before the estate had been declared insolvent the administratrix went on and built a brick house thereon. The house was subsequently sold in payment of debts of the estate, and it was claimed that the administratrix was entitled to an equitable credit for the amount the house sold for. The circuit court rejected the claim and gave judgment for the full amount wasted, without regard to the benefit resulting to the estate from the sale of the house.

In reversing the judgment of the lower court, this court said, that as to the strict law of the case, there could be no

doubt that the administratrix, in building the house, made a misapplication of the funds of the estate, and that she was liable for the waste committed, but that she might well claim a credit for the improved value of the estate which had been applied towards the payment of the debts due by the intestate ; that it would be anything else than equitable, to allow the creditors to receive the improved value of the estate, and then to recover the full amount of the assets, which had been wasted or misapplied towards the improvement. The prevailing rule now established in this court is, that executors and administrators stand in the position of trustees to those interested in the estates upon which they administer, and are liable only for want of due care and skill, and that the measure of care and skill required of them is that which prudent men exercise in the direction and management of their own affairs. (State vs. Meagher et al., 44 Mo., 356 ; Foster vs. Davis, 46 Mo., 268 ; Clyce vs. Anderson, 49 Mo., 37 ; Fudge vs. Dunn, 57 Mo., 264 ; Gamble vs. Gibson, 59 Mo., 585.)

It cannot in fairness, or with justice, be said in this case, that Mrs. Merritt, the administratrix, adventured the funds in business of her own, from which she expected to derive a personal benefit. She was deeply interested in the preservation of the estate, one-half of it being left to her by the terms of her husband's will. When her husband died, a hotel with furniture was left on hand, which she could not dispose of. The furniture was appraised at $11,415.92, but the testimony is, that it would not have brought more than $8000, if it had been put up and sold at auction. She, therefore, determined to continue the business till a more favorable time for selling out arrived. The rent was going on, and the estate was bound for that at all events. She kept the hotel for a little over a year, and finally found an advantageous opportunity to sell. She disposed of the furniture for $20,000, receiving one-third cash down, and the other two-thirds were to be payable in two equal annual instalments, payment of which was secured by a deed of trust on the property. The first deferred instalment she collected, but when the second became

due, the purchasers had become bankrupt, and $2000 of it proved to be uncollectable. She duly accounted in her settlement for the $18,000 with the interest, but asked credit for the $2000, which the court allowed. It is now contended that she should be held responsible for the $2000, which was lost, and that the excess of nearly $9000 over the appraisement, for which she sold the furniture, in consequence of her prudence and good management, should not be taken into account or regarded in her favor. But we cannot concede this proposition. It would be grossly inequitable. The estate was benefited several thousand dollars by the course she pursued, and it would be too harsh an application of the doctrine under the circumstances of this case, to say that she should bear all the loss and the estate reap all the benefits resulting from her skill and care. She was not embarked upon a speculation of her own in dealing with the trust funds. She was only endeavoring to secure, preserve, and take care of the effects till she could advantageously get them off of her hands. The most entire good faith seems to have prompted her throughout. She made no attempt to get any remuneration for the loss she suffered—that she willingly sacrificed. The court allowed her a credit for $12,333.33, the amount of the rent she paid to the lessor of the estate, whilst she held the possession, and we think it did right. It was a charge absolutely, and at all events. Had the house stood idle and unoccupied, the rent would have been payable just the same. From the evidence it is perfectly clear that, if she had not continued in the house, nothing could have been done with it which would have rendered it beneficial to the estate. At the very first opportunity that she could do so in safety, and on good terms, she disposed of it. She ought to be charged with whatever she made from the rent of the store rooms and the bar; but even then it is plain that there would be a deficiency of assets. The Keyes note of $18,000 was not available because its payment was restrained by order of court. Then, after taking out the credit for house rent, and the loss on the furniture, the settlements show that there was an insufficiency of assets to pay the creditors.

Wherefore, the judgment in their favor was right, and must be affirmed. All the judges concur, except Judge Vories, who is absent.