VAN BIBBER, *Administrator*, v. JULIAN, *Public Administrator*, *et al., Appellants.*

1. **Administration**: SALE OF LAND FOR DEBTS: EQUITY. Equity will not permit heirs to hold possession of real estate together, with its increased value caused by improvements and expenditures made thereon in good faith by the administrators, and at the same time to resist the application of creditors to subject said property to the payment of their debts, on the technical ground that the improvements and expenditures constitute waste, for which the creditors should resort to a suit on the administrators' bond, with the trouble, expense and delay incident thereto.

2. ————: FINAL SETTLEMENT: WASTE, WHEN INCLUDED THEREIN. Waste of the estate by an administrator, occurring before final settlement, is included therein, and so long as the settlement remains in force it is conclusive on the heirs and all others.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

AFFIRMED.

*F. P. Wright* and *W. C. Price* for appellants.

The creditor should have given the administrators twenty days' notice of his intention to ask for an order for the sale of the real estate. The petition for the order of sale is also fatally defective in not averring positively that the personal estate was insufficient to pay the debts of the estate. When the personal estate becomes so insufficient, in consequence of the *devastarit* or neglect of duty of the administrator, an order for the sale of the real estate should not be granted in the first instance, but recourse should be had to the administrators' bond. *Merritt v. Merritt,* 62 Mo. 150.

*F. S. Heffernan* for respondent.

The final settlement of Henslee and Norfleet as administrators of Shackleford's estate, and turning over to the present administrator, their successor, the sum of $4,367.13, the amount of money found by the court in their hands, belonging to the estate of Shackleford, deceased, and discharging them from further liability, was a final judgment and cannot be attacked in any subsequent collateral suit. Bigelow on Estop., (1 Ed.) pp. 7, 8, 22, 23, 45, 46, 159, 160, 175; *Lynch v. Swanton,* 53 Me. 100; *Bunker v. Tuffts,* 57 Me. 417; *Stewart v. Dent,* 24 Me. 111; Freeman on Judg., §§ 246, 249, 252, 253, 254, 255, 275, 319, 608, see note; *Dublin v. Chadborne,* 16 Mass. 433; *Simpson v. Norton,* 45 Me. 281; *Townsend v. Townsend,* 60 Mo. 246; *Lewis v.*

*Williams*, 54 Mo. 200. There is no privity between an administrator and an administrator *de bonis non.* Bigelow on Estop., p. 80. A personal judgment against an administrator concludes the heirs. Bigelow on Estop., p, 80, note; *Steel v. Scincberger*, 59 Pa. St. 308. The administrators could not appeal from the final settlement after having satisfied the judgment rendered against them thereat. *Fagan v. West*, 11 Mo. 208; *Chase v. Williams*, 74 Mo. 429 ; *Robards v. Lamb*, 76 Mo. 192.

RAY, J.—This is an application to the probate and common pleas court of Greene county, Missouri, on the part of J. D. VanBibber, as administrator *de bonis non* of the estate of Nathan Boon, deceased, who was a creditor of the estate of G. P. Shackleford, deceased, for the sale of the real estate of said Shackleford, for the payment of debts.

The proceedings were had and conducted, under sections 10, 22, 23, 24, 25 and 26, art. 3, of the administration law, 1 Wag. Stat., pp. 94, 96 and 97. The petition was filed December 14th, 1878, by VanBibber, as a creditor, under section 23 of said statute, and charged in substance, that the estate of his intestate, Boon, was a creditor of the estate of said Shackleford, in about the sum of $12,664.86, which had been duly allowed and classed in the 5th class of demands against said estate ; that said Shackleford had died ; that his personal estate was insufficient to pay his debts, and prayed for the sale of the real estate, or so much thereof (describing the same) as might be sufficient to pay the same.

Due notice of this petition was given to S. H. Julian, public administrator of said county, and administrator *de bonis non* of the estate of said Shackleford who, thereupon, filed his accounts, lists and inventories, as required by statute; of all which due notice was given to all persons interested in said estate; whereupon, T. J. Weaver and the other heirs at law of said Shackleford, appeared in court, and resisted said application, alleging, among other things,

that the personal estate was amply sufficient to pay the debts of the deceased; and, also, claiming that if the same had become insufficient, by reason of the waste or misapplication of the administrators of said estate, that recourse should first be had to the bond of said administrator, before resort could be had to the real estate.

Upon this petition and these objections, as shown by the record, a trial was afterwards had before said court, which resulted in a finding for the plaintiff and a judgment accordingly, ordering the sale of so much real estate as might be sufficient to pay said debt, costs, etc. From this judgment the heirs appealed to the circuit court, where the judgment of the probate court was affirmed, from which the defendants have appealed to this court. This case we may remark, in one form or another, has been in this court twice before; the first time in 54 Mo. 518, the second in 66 Mo. 493.

The prior contests have been between the administrator *de bonis non* of Boon's estate, and the representatives of his administrator. This contest, however, is between Boon's said administrator and the heirs of his representative and former administrator.

From the agreed statement in the cause, we gather tnat Henslee and Norfleet were the original administrators of the estate of said Shackleford, deceased; that their administration commenced in 1863, and continued until sometime in 1875, when their letters were revoked by the probate court, and said estate, by order of said court, was turned over to said S. H. Julian as administrator *be bonis non*, who thereupon took and still has charge of said estate. We, also, gather from said agreed statement and said record, in substance as follows: That some time in the year last aforesaid (1875) the former administrators, Henslee and Norfleet, made with said probate court a final settlement of their said administration of said Shackleford's estate, showing that there was then remaining in their hands a balance of $4,367.13, in cash; and, also, showing that, thereafter,

one J. S. Moss, a surety in the administration bond of said Henslee and Norfleet, appeared in court and paid into the hands of said Julian, administrator *de bonis non* of said Shackleford's estate, the said amount of cash, so found in the hands of said Henslee and Norfleet, the former administrators as aforesaid, and, also, fully paid over to said Julian all money, property, goods, chattels and effects, remaining in the hands of said Henslee and Norfleet, and that said Henslee and Norfleet, the former administrators, had in all things done and performed the orders of said court, touching said administration, and thereupon, by order of said probate court, said Henslee and Norfleet, together with their sureties, were discharged from said trusts, etc.

The record further shows that the former administrators, Henslee and Norfleet, in the course of their administration, had paid out to the heirs of said estate, about $1,600; and that they had expended some $2,000 in fencing and repairs upon said real estate; that they expended about $824.80 in purchasing in dower rights to the same, and also paid out the further sum of $650 in purchasing outstanding titles to said real estate. Besides this, they paid out for a trip to Texas, on business of the estate, some $658, and the sum of $585.80 for a similar trip to Arkansas. In addition, they, also, expended considerable sums in paying the taxes due on said real estate; in attorneys' fees for professional services in and about the litigation, incident to said estate, and other expenditures and costs, incident to said administration; all of which are complained of by the heirs as constituting waste and misapplication by said administrators of the personal estate, for which they and their sureties in their official bond are responsible.

Besides this, the record further shows that when the order of the probate court for the sale of the real estate was first made, the heirs appealed to the circuit court, where said order was reversed and remanded by the circuit court, with direction to the probate court to hear all the evidence, as to any assets, in the hands of said Henslee and

Norfleet, the former administrators, together with the disposition and application of the same, which was accordingly done, and after a full hearing and accounting, so ordered, (in which the propriety, necessity and value of said payments, expenditures and applications of said assets were considered and approved by said court,) it was again found by said court that the personal estate was largely insufficient to pay the debts, and said order for the sale of the real estate was again made, from which, also, the heirs again appealed to the circuit court, where the same was affirmed, from which the appeal was taken to this court, as before stated.

As before remarked, the contest now before us is between a creditor and the heirs of said Shackleford, deceased. It is here claimed by the latter that the personal estate is the primary fund for the payment of debts, and that the real estate can only be looked to after the personal estate has been so applied and exhausted. They, also, contend, that if the personal estate, by reason of waste or misapplication on the part of the administrator, has become insufficient, resort must first be had to the bond of the administrators and their sureties before the real estate can be looked to.

On the other hand, it is claimed for the creditor : 1st, That under the facts of this case, as disclosed by the record, the heirs are not equitably entitled to be heard to object to the alleged acts of waste and misapplication complained of in this case; 2nd, If they are, they are concluded by the final settlement of said former administrators from here contesting the matter, so long as said settlement remains in force, unappealed from and unset-aside for fraud or otherwise. The evidence in the cause, as disclosed by the record, shows that at the close of the war, it was found that all the fencing around, in and about the farm, had all been destroyed during the war, and by its ravages, and that it was impossible to rent the farm without re-fencing the same and making other necessary repairs; that said fencing and

repairs were accordingly made; that the farm, so fenced and repaired, was rented out, and the rents collected, and accounted for, as part of the assets of said estate; that one of said heirs, T. J. Weaver, himself, made a large part of said repairs, at a cost of some $800, and became the tenant of said farm, so repaired, and that he was allowed the costs of said fencing and repairs out of the rent, so due from him by way of set-off; that the said existing dower rights, and other outstanding titles to and upon said real estate, were purchased in for the benefit of said estate; that the taxes on the real estate, for all these years, which were a charge on said real estate, were, also, paid by said administrator on behalf of said estate. It also appeared that Shackleford, the deceased, had died away from home, in the state of Texas, having with him at the time papers, notes and evidences of debt due his estate, and that it became and was necessary to employ some one to go to Texas after them, and that Mrs. Shackleford was selected for that purpose; that she went and got them, and brought them back to the administrators at considerable expense, which was paid by said administrators. A part of the assets was also in Arkansas, and Jones was employed to go after and get them, and paid therefor. During the same period, it further appears that said Henslee and Norfleet also paid to the heirs, themselves, some $1,800, none of which they offer to refund. It seems, also, that considerable sums were paid out, as attorneys' fees, for professional services in and about litigation, incidental and necessary to the administration of said estate. In all these transactions, said Henslee and Norfleet appear to have acted in the utmost good faith, for what they deemed the best interest of the estate and said heirs.

The propriety and good faith of all these transactions as well as others not necessary to particularize, on the part of said administrators, as well as the equitable right of the heirs to complain of them in this proceeding, were carefully considered and examined by the probate court, at the

instance of said heirs, and the finding of said court thereon was against them. It is not pretended that the fencing and repairs on the farm were not useful and valuable; nor that said dower rights, and other outstanding titles, were not valid claims; nor is it pretended that said administrators, in any of these transactions, were interested or engaged in any speculation of their own; but only endeavoring to protect, preserve and take care of the estate and trust committed to their charge. Under such circumstances, we are not prepared to say that the probate court committed error in its said findings and judgment. It may be conceded that the position contended for by the heirs, is generally true at law. It may be conceded, also, that the administrators and their sureties would be liable to a creditor for such misapplication of the personal estate, to which he has a right to look; and it may, likewise, be conceded that the heirs, also, might hold the administrators responsible for adventuring the funds of the estate in their own business, or other outside operations; or even in any unauthorized, useless or wasteful expenditures in or about the estate itself, to their prejudice. But, in a case like this, it seems to be inequitable to allow the heirs to hold the possession of the real estate, with its confessedly increased value, by reason of those improvements and expenditures, thus made in good faith, and at the same time resist this application, on the technical ground that such expenditures constitute waste, for which the creditor should be compelled to resort to a suit on the bond of the administrators, with the trouble, expense and delay incident thereto.

In the case of *Byrd et al. v. The Governor*, 2 Mo. 102, this court held, in substance, that when the deceased in his lifetime had dug and walled a cellar on a lot, and his administrators went on and built a brick house thereon, at a cost of some twelve or thirteen hundred dollars, which lot with the house thereon, was afterwards sold for the payment of debts and its proceeds applied accordingly, and a suit, thereafter, being brought on the administrators' bond

for waste and misapplication of the funds so expended, and the court said that "it would be anything else than equitable, to allow the creditor to receive the improved value of the estate, and then to recover the full amount of the assets, which had been wasted, or misapplied towards the improvement." The case of *Merritt v. Merritt*, 62 Mo. 150, like this, was an application by creditors for the sale of real estate to pay debts, and the application was resisted by a devisee, who was interested in the real estate sought to be sold. In that case the court recognize the general rule, contended for by the heirs in this case; but proceeds to show, that, in modern practice and in proceedings like this, the rule has been to some extent modified and applied with less rigor. The court adds in this connection that "the prevailing rule now established in this court, is, that executors and administrators stand in the position of trustees to those interested in the estate upon which they administer, and are liable only for want of due care and skill, and that the measure of care and skill required of them is, that which prudent men exercise in the discretion and management of their own affairs." 44 Mo. 356; 46 Mo. 268; 49 Mo. 37; 57 Mo. 264; 59 Mo. 585.

In that case (*Merritt v. Merritt, supra*) the administratrix, Mrs. Merritt, had continued the business of her husband, who had leased a furnished hotel for several years, at large annual rental, to be paid in monthly installments. This, she did, without any order from the court, for a little over one year, when she sold out. She paid the rent for which the estate was liable, and by her prudent management and expenditure of the funds and assets of said estate, in the conduct of said business, the estate was benefited several thousand dollars. In the proceeding in that case, it was sought to charge her with the amount of rent, etc., so paid out by her, as for waste and misapplication of the amount so expended, and, among other things, it was held, in effect, that she was fairly entitled to a credit, for the amount

of rents, etc., so paid in the conduct and management of said business.

If there was any question of the propriety of this view of the case, there is another objection equally fatal to the claim of the heirs in this case. The alleged waste and misapplication occurred, if at all, prior to the final settlement of said Henslee and Norfleet, and so long as that settlement remains in force, unappealed from and unsetaside for fraud or otherwise, it is in a case like this, conclusive on all persons, the heirs included. Such settlements have the force and effect of general judgments, and cannot be impeached in a collateral proceeding like this. *Sheetz v. Kirtley,* 62 Mo. 417; *Lewis v. Williams,* 54 Mo. 200; *Jones v. Brinker,* 20 Mo. 87; *State to use of Tourville v. Roland,* 23 Mo. 95; 37 Mo. 300; 47 Mo. 390.

In either view, and in any event, we think the trial court did right in its finding and judgment, and the same is, therefore, affirmed.

All concur, except SHERWOOD, J., who having been of counsel, did not sit in the cause.