SCUDDER *et al., Trustees, v.* AMES, *Administratrix.*

1. Partnership : CUSTOM: CONTRACT. A custom between partners that either one may draw out of the funds of the partnership more in any one year than the other, if long continued, may become engrafted in the written contract of partnership.

2. ———— : DUTIES OF PARTNER IN PRESERVING PARTNERSHIP ESTATE : COMPENSATION. A partner is bound to discharge his duties in regard to preserving and caring for the partnership estate without extra compensation, in the absence, or disability, or death of his partner.

3. Administration : COMMISSIONS. An administrator is not entitled to collect rents of real estate, or to receive commissions therefor.

4. ————. An administrator is chargeable with all money of the estate which has come into his hands, no matter from what source derived.

*Cross-Appeals from St Louis Court of Appeals.*

REVERSED.

*G. G. Vest, W. F. Boyle* and *G. P. B. Jackson* for Lucy V. S. Ames, administratrix, appellant.

(1) The court below erred in disallowing the credits on account of U. S. income tax paid. The law clearly made it the duty of Mrs. Ames, as administratrix, to

make returns of the amount of income as she did and to pay the tax thereon. 5 Inter Rev. Rec. p. 75. (2) The administratrix did not charge double commissions on the item of $29,815.08. (3) As to the commissions on rents, which the court disallowed, there was this palpable error, viz: The statute allows commissions "on personal property," (G. S., 506, sec. 9 ; R. S., sec. 229), while the court only allowed the commissions asked under the designation "on disbursements." We do not contend that the administratrix is entitled to five per cent. on the amount of the inventory, but that she is entitled to it upon the whole volume of available assets passing through her hands. It is wholly immaterial whether the commissions are claimed on the assets, as they are realized, or on disbursements, so long as they are not charged both ways, and do not, together, exceed five per cent. on the total amount of available personal property. The commissions allowed by the court were less than five per cent. on the available personal property, in a sum greater than the amount asked as commissions on rents ; hence, the court should not have deducted the amount asked as a credit, under that designation. Allowances to administrators have the effect of judgments and are conclusive until set aside in a proper proceeding. *Jones v. Brinker*, 20 Mo. 87 ; *Whittlesey v. Dorsett*, 23 Mo. 236 ; *State v. Stephenson*, 12 Mo. 178. (4) Henry and Edgar Ames, having, as sureties, paid the debt of Fitzpatrick, were entitled to be subrogated to any securities, indemnities or rights of their principal. *Haven v. Foley*, 18 Mo. 136 ; Brandt on Suretyship, Sec. 282. Therefore, if Fitzpatrick, for any reason, was entitled to any relief against the county on account of these matters, the Ames having paid his debt as sureties, were to be subrogated to his right to that relief. This was an incident to their claim against him ; a right existing as part of that claim, and not resting on any sep-

arate contract. If they, in their lives, had transferred the claim against Fitzpatrick, it would have carried with it this right to be subrogated to his relief against the county. Story's Eq., [12th Ed.] sec. 1047 *a; Foster v. Fox*, 4 Watts and Serg. 92. Even, although not in terms transferred, with the original claim against him. *Craig v. Perkins*, 40 N. Y., 181–5. (5) The good will of a business, or firm, separated from the actual assets, from the place of business, and from the stock or property used, is no asset, and is not the subject of sale, because what remains is merely personal to the individuals engaged in the business. Story on Part., [6th Ed.] sec. 99 ; Parsons on Part., [2d Ed.] 262 s. p ; *Robertson v. Quiddington*, 28 Beav. 529. All the authorities agree that the good will, in a professional partnership, is not an asset, and survives to the remaining partner, and this, because it is a personal thing. Story on Part., *Ib.; Parsons on Part. 264, s. p. There is not any ground for a distinction between the good will of a professional partnership and that of a mercantile firm, which is not connected in any manner with the place of business, or with the merchandise, or other property used in the business. It is as much personal in one case as in the other. In both cases it equally and solely has reference to the skill, the integrity, and the punctuality of the individuals. That upon the death of one partner, the goodwill survives to the remaining partners, has been directly decided in *Hammond v. Douglass*, 5 Ves. 539, and in *Lewis v. Langdon*, 7. Sim. 425. The doctrine as announced in the latter case, is approved by Chancellor Kent. 3 Kent's Com. 64. (6) The firm of Garrard & Co. was dissolved by the death of Henry Ames, and Edgar Ames and J. J. Garrard became the surviving partners. As Garrard's interest was only in the profits, and as there were no profits, we may for the present purposes regard the matter as in the hands of Edgar Ames for settlement as surviving partner. The rights and liabilities

between the parties are to be determined on one of two theories ; either that Edgar Ames continued the business, generally using the firm assets, or that he was simply winding up the unfinished business, and getting in the debts—and to that end, doing such things as he believed, or claimed, were proper and necessary. If the former, then, of course, if he acted without the assent of the representative of the deceased partner, he was liable for profits or interest on the capital [on hand, as they might elect ; but if he had such assent he was not liable at all, if no profits were made, nor was he liable for any losses. *Millard v. Ramsdell,* • Harr. Ch. [Mich.] 373. On the other theory, he was entitled to reimbursement for expenses and advances *bona fide* paid and made by him for the benefit of the common interest. *Ex parte Chippendale.* 4 De G., M. & G., 19 ; *Ex parte Bignold,* 22 Beav. 143 ; *Baker's case,* 1 Dr. & Sm. 55 ; *Troup's case,* 29 Beav. 353 ; *Hoare's case,* 30 Beav. 225 ; *Whitman v. Porter,* 107 Mass. 522. An outlay made by one partner, with the approbation of the co-partner (or his representative), and for the benefit of the firm, must be made good by the firm, however useless it may have been. Lindley on Part. 778 ; *Gleadow v. the Hull Glass Co.,* 13 Jur. 1020. If, then, the court below concluded that Edgar Ames had assumed to carry on the business for his own account, the very most that could be done was to charge him with the stock of goods, at its value on August 14, 1866. This the court did, as well as to charge up the amounts collected. But the two were inconsistent, for one charge rested upon one theory, while the other charge is founded upon an alternative theory. In arriving at the value of the goods, the court arbitrarily fixed a valuation, in disregard of the evidence, which clearly shows that a deduction of thirty-three and a third per cent. from the invoice prices was eminently fair and reasonable. (7) This court will not consider objections not brought to the attention of the trial court. *McCrary*

*v. Menteer*, 58 Mo. 446. The itemized exhibit, filed with the exceptions to the final settlement and the findings of the court below, show that no objection was made or exception taken to the payment of the Lindell Hotel bonds, or to interest on same; or to any of the charges or payments for insurance, taxes or repairs. The only objection made was to the credit taken by Mrs. Ames for commissions on these items and to the bonus of five thousand dollars paid for redemption of the bonds before maturity. Commissions were properly allowed on these payments. *Carlisle v. Mulhew*, 19 Mo. 56; *Duhring v. Duhring*, 20 Mo. 174; *Willet v. Brown*, 65 Mo. 147; *Matthews v. Hunter*, 67 Mo. 293. Even if the property be considered as real rather than personal estate, until it had been demonstrated by and through the administration that it was not needed to pay debts, the heirs or devisees were not entitled to possession. *Curtis v. Sutter*, 15 Cal. 259; *Kline v. Moulton*, 11 Mich. 370; *Flood v. Pilgrim*, 32 Wis. 376; *Eoff v. Thompkins*, 66 Mo. 225–6.

*Broadhead & Haeussler, Krum & Jonas* and *Douglass & Scudder* for John A. and William H. Scudder, executors, respondents.

(1) As executor of the last will of Henry Ames, deceased, Edgar Ames was entitled to take possession of and administer upon all the estate of said Henry Ames. (2) For the purposes of settlement, Edgar Ames, as surviving partner, was exclusively entitled to the *choses in action* of the late firm, and became tenant in common, with the executor of Henry Ames, in the other assets, real and personal, of the partnership. *Bredow v. Mutual Savings Inst.*, 28 Mo. 181; *Burnside v. Merrick*, 4 Met. 537, p. 540; *Dyer v. Clark*, 5 Met. 572, p. 576; *Dupuy v. Leavenworth*, 17 Cal. 252. (3) On the dissolution of a partnership, every partner has a right, in the absence

of an agreement to the contrary, to have the good will of the business sold for the common benefit of all the partners. Upon the death of a partner the good will does not survive, but becomes a part of the assets of the firm. Lindley on Partnership, *861; *Wedderburn v. Wedderburn*, 22 Beav. 84, p. 104; *Smith v. Everett*, 27 Beav. 446; *Case v. Abeel*, 1 Paige, 393; *Holden's Adm'rs v. McMackin*, 1 Parson's Sel. Ca. 270; *Williams v. Wilson*, 4 Sandf. Ch. 379; *Dougherty v. Van Nostrand*, 1 Hoff. Ch. 68; *Rammelsberger v. Mitchell*, 29 Ohio St. 22; *Binninger v. Clark*, 60 Barb. 113; *Sheppard v. Boggs*, 9 Neb. 257. (4) Real estate, to be partnership property, must have been either contributed as a portion of the capital of the firm, taken in settlement of debts due to the firm, or bought with partnership funds for partnership purposes, "for the use and convenience of the co-partnership business," and so held. *Carlisle's Adm'r v. Mulhern*, 19 Mo. 56; *Duhring v. Duhring*, 20 Mo. 174; *Willet v. Brown*, 65 Mo. 146; *Matthews v. Hunter*, 67 Mo. 293; *Cox v. McBurney*, 2 Sandf. Ch. 561; *Coder v. Huling*, 25 Pa. St. 84; *Price v. Hicks*, 14 Fla. 565; *Bird v. Morrison*, 12 Wis.; *Deming v. Colt*, 3 Sandf. Ch. 284; *Wooldridge v. Wilkins*, 3 How. [Miss.] 360; *Markham v. Merritt*, 7 How. [Miss.] 437; *Wheatley v. Calhoun*, 12 Leigh, 264; *Morgan v. Olvey*, 53 Ind. 6; *Hale v. Henrie*, 2 Watts, 143; *Ridgway's Appeal*, 15 Pa. St. 177; *Grubb's Appeal*, 66 Pa. St. 117. (5) Upon the death of Henry Ames, Edgar Ames, as executor of the last will of said Henry Ames, took charge of his individual estate; and as surviving partner Edgar Ames took charge of the partnership estate of Henry Ames & Company. In the latter capacity he did not give a bond, as is required by statute (G. S. 1865, Ch. 120, sec. 55), but proceeded under his common law rights as surviving partner. The estate of Henry Ames & Company having been practically settled by Edgar Ames, and there re-

maining in his hands, at his death, over three hundred thousand dollars in cash, the proceeds of the partnership estate, it was his duty to have paid a moiety of the same to himself as executor of Henry Ames, and such payment should be held to have been made. *Caskie's Ex'rs v. Harrison*, 76 Va. 85 ; *Commonwealth v. Gould*, 118 Mass. 300 ; *Griffith v. Chew, Ex'r*, 8 Serg. & R. 32. Consequently, upon the death of Edgar Ames, John A. and William H. Scudder, succeeding executors, were entitled to such moiety as a portion of the individual estate of their testator. (7) Upon the death of Edgar Ames, John A. Scudder and William H. Scudder succeeded to all his rights and powers as executor of the last will of Henry Ames, and were entitled to the possession of all the property that had come into the custody of Edgar Ames as such executor. (8) Lucy V. S. Ames, however, upon her appointment and qualification as administratrix of the estate of Edgar Ames, deceased, and upon her giving bond for her administration of the partnership estate, did not succeed to the rights and powers of Edgar Ames as surviving partner, but stood in the same position regarding that estate as an ordinary administrator. *In re Ames & Co.*, 52 Mo. 290. (9) The administratrix acquired no rights, either by virtue of her office of administratrix of the estate of Edgar Ames, or by virtue of her administration of the partnership estate of Henry Ames & Company, over the individual estate of Henry Ames ; in taking possession of the property of that estate she did so without a color of right, and her action was an unjustifiable trespass. Having wrongfully taken possession of property to which she was not entitled, and expended thereupon moneys in her charge as administratrix of another estate, she is not entitled to take credit for such expenditures in her settlements of the estate in her charge. Where an administrator brings into his accounts matters foreign to the estate in his charge, the probate court has no jurisdiction over

such items, and cannot allow, against the estate in ad-ministration, payments and expenditures not made on account of such estate. R. S. 1825, p. 1599 ; G. S. 1865, p. 899 ; *Ib.*, p. 502, sec. 9 ; *Ib.*, p. 506, sec. 9 ; *Jefferson Co. v. Cowan*, 54 Mo. 237 ; *Presbyterian Church v. McElhenney*, 61 Mo. 543 ; *Chambers' Adm'r v. Wright's Heirs*, 40 Mo. 482 ; *Butler v. Lawson*, 72 Mo. 227. (10) The administratrix had no power to apply the money of the estate in her charge to uses foreign to that estate, and was not entitled to have such expenditures credited to her in her settlement of that estate. This administratrix took no interest in the real estate ; had the property been necessary for the payment of debts she might have had a power of sale, but there were no debts in this case to support such power. *Duhring v. Duhring*, 20 Mo. 182 ; *Willet v. Brown*, 65 Mo. 138 ; *Matthews v. Hunter*, 67 Mo. 293 ; *Buchan v. Summer*, 2 Barb. Ch. 168, 201 ; *Buckley v. Buckley*, 11 Barb. 43, 74 ; *Lang's Heirs v. Waring*, 25 Ala. 625 ; *Goodburn v. Stevens*, 1 Md. Ch. 420 ; *Galbraith v. Gedge*, 16 B. Mon. 631 ; *Hale v. Plummer*, 6 Ind. 121 ; *Wilcox v. Wilcox*, 13 Allen, 253 ; *Shearer v. Shearer*, 98 Mass. 107. (11) The administratrix was not entitled to credits for unreasonable and improper expenditures in getting in and caring for the estate in administration. G. S. 1865, sec. 9, p. 506 ; W. S., sec. 9, p. 108 ; *Henderson v. Simmons*, 33 Ala. 291 ; *Edmonds v. Crenshaw*, Harp. Eq. 224, p. 232 ; *Miles v. Peabody*, 64 Ga. 729, p. 734. (12) The administratrix is chargeable with all property of the partnership estate which has come to her hands, no matter from what source it may have been received, and she should account for the same. *Naylor v. Moffatt*, 29 Mo. 126. (13) In making a settlement for the deceased "surviving partner," the administratrix should have charged him with the inventory price of the stock of goods at Vicksburg, with interest down to the date of the settlement in which this was reported.

*Kimball v. Lincoln*, 99 Ill. 578; *Sigourney v. Munn*, 7 Conn. 11, 234; *Dougherty v. Van Nostrand*, 1 Hoff. Ch. 68; *Evans v. Evans*, 9 Paige, 178; *Crawford v. Spotz*, 11 Phila. 255; Parsons on Part. [3 Ed.] *445. (14) In the settlement made by her for the deceased surviving partner, the administratrix should have charged him with the amount of money withdrawn from the partnership funds by him after the death of Henry Ames. (15) The administratrix, in the settlement made by her for the deceased surviving partner, should not have credited him with commissions on account of his administration of the partnership estate, and having withdrawn a large sum from the partnership funds as such commissions, she should be held to account for the same. *Burden v. Burden*, 1 V. & B. 170; *Stocken v. Dawson*, 6 Beav. 371; *Cooper v. Reid*, 2 Hill Ch. 549; *Beatty v. Wray*, 19 Pa. St. 516; *Ames v. Downing*, 1 Bradf. 321; *Piper v. Smith*, 1 Head, 93; *Berry v. Jones*, 11 Heisk. 206; *Schenkl v. Dana*, 118 Mass. 236. (16) Where an investment made by one partner on his separate account results in a loss, such loss is not properly chargeable against the partnership estate. (17) Money paid out by the administratrix on account of one estate in her charge, is not properly chargeable against another estate upon which she is administering; nor is she entitled to credit for money paid "to make good a warrantee" of her intestate, and his co-tenant of title to land in another estate, nor for money paid "to get rid of" troublesome people. (18) The administratrix was entitled to a commission of five per cent. on all disbursements and distributions from and of the personalty of the estate in her charge, made under the order of the probate court; she was also entitled to the same commission on all payments of reasonable expenses incurred in "leasing real estate," obtaining "legal advice and service, and collecting and preserving the estate." This is in full for her services and trouble, and she can

make no other charge. G. S. 1865, chap. 124, sec. 9 ; W. S., sec. 9, p. 108 ; *Gamble. v. Gibson*, 59 Mo. 585. (19) The administratrix should have been charged with interest on all moneys of the partnership perverted by her to uses foreign to that estate, and on all moneys of the estate collected by her for which she failed to account. *Attorney General v. Alford*, 4 DeG. M. & G. 843 ; *Garniss v. Gardner*, 1 Edw. Ch. 128 ; *King v. Talbot*, 40 N. Y. 95.

SHERWOOD, J.— This cause comes here from the St. Louis court of appeals, which court affirmed *pro forma* the judgment of the circuit court. Both parties appealed from the judgment, as well as from the judgment of affirmance.

The cause originated in the probate court and the litigation grows out of exceptions filed by the executors of the will of Henry Ames, deceased, to the final settlement of Lucy V. S. Ames, administratrix, settling the partnership estate of Henry Ames & Company. The probate court after hearing evidence on the numerous exceptions, found a balance against the administratrix of $42,554.43, and gave judgment against her in favor of the exceptors, for $21,277.43, that amount being the distributive share of the estate of Henry Ames, deceased. From this judgment the exceptors appealed to the circuit court, and that court upon hearing the evidence, the record of which is very voluminous, and after sustaining several of the exceptions, made certain findings of fact and law, and rendered judgment against the administratrix for precisely the same amount as that rendered by the probate court. The correctness of these rulings of the circuit court is now to be determined.

I. Of the sale of the good-will of the firm of Henry Ames & Company, by the administratrix, it is needless to say more than this, that it is evident from the language of the proposal of Wm. H. Scudder and Mrs.

Catharine Ames, and of the bond they gave the administratrix that the good-will of the *firm* was not sold. This fact supersedes the necessity for the discussion of the point. If the exception made had instead been one as to whether Edgar Ames should have charged himself in his inventory with the good-will of the firm as an asset thereof, a different question might have been presented, the investigation of which now would be altogether superfluous.

II.   Relative to the payment of the Lindell Hotel bonds, in order to redeem the hotel property from the lien of the first mortgage, and relative to the payment of the bonus of five thousand dollars to the Boatman's Savings Bank to take up those bonds prior to maturity, a majority of the court are of the opinion that that property was partnership property and that the act of the administratrix in redeeming that property was a necessary act and beneficial to the partnership estate, and that inasmuch as she subsequently obtained for that act the approval of the probate court, that such subsequent approval had a retroactive effect, making the prior act of the administratrix of equal validity as if she had, in the first instance, obtained from the probate court an order to redeem the hotel property.   And by reason of like considerations, they also hold that the *bonus* aforesaid, used to take up the bonds before maturity, was validated by subsequent approval.   The majority of the court also hold that all commissions arising out of these matters claimed by the administratrix should be allowed her.   On these points I do not concur.   I hold that the property in question was not partnership property, and even had it been, that an order to redeem, an order to take up the bonds should first have been obtained, and that the probate court not having been applied to as required by the statute, had no jurisdiction to act in the premises, whether the property in question were individual or partnership property.   There were no excep-

Scudder v. Ames.

tions taken in the probate court only in relation to the commissions on the sums aforesaid, but as the consideration of the commissions on those sums necessarily involved the consideration of the other features of the cause which have been discussed, and as the case goes back for re-trial it has been thought best to discuss them.

III.   The majority of the court, holding, as they do, that all the real estate owned by the brothers, Henry and Edgar, was partnership property, hold also, that in consequence thereof, the administratrix should be allowed all appropriate credits and commissions for repairs, taxes, insurances, etc., on all such real estate, whether situate within or without the state of Missouri. I do not subscribe to any such doctrine.   I hold, that there is no room for doubt that the property was held by the brothers as tenants in common, and not otherwise, and that in any event, neither the duties nor the powers of the administratrix extended beyond the limits of this state.

IV.   Edgar Ames, when making his inventory of the partnership estate, omitted to include a large stock of goods which his firm had also in Vicksburg, Mississippi. Of this stock he made no appraisement, but carried on the business on his own account, as if the property were his own.   An inventory of this stock of goods, taken July 1, 1886, which was but about six weeks before Henry Ames' death, showed that the stock was worth at cost price $78,300.68.   Edgar Ames should have sold this stock of goods and should have accounted for the proceeds, and could not be allowed to take the goods at a valuation.   His administratrix coming in, in 1870, with her final settlement of the partnership estate, was allowed to claim a large percentage for depreciation on this stock of goods.   This claim for depreciation was allowed, upon the testimony of witnesses as to the estimated depreciation, years after the property was taken

and appropriated by Edgar Ames as his own, four years after the death of Henry Ames, and after the stock of goods had been destroyed by fire. The circuit court allowed this claim for depreciation to the extent of twenty per cent., stating in the opinion that such depreciation or discount was fixed by the surviving partner. There is no such evidence. My associates, however, concur with the lower court and allow the depreciation. I do not concur in this.

V. As to interest on all claims the amounts of which the administratrix collected, but willfully omitted to account for in her settlements, she should, according to the opinion of a majority of this court, be charged only the lowest rate of simple interest from the time of her reception of the money. On this point I do not concur, thinking the rate should be greater, and that there should be annual, or at least frequent, rests. In relation to interest on any sums which she reported to the probate court as collected, the majority of the court are of opinion that she should not be charged any interest whatever, no matter how long the money may have remained idle in her hands or in the bank, and no matter whether she could have loaned the same under the order of the probate court or not. The opinion of the majority on this item, as was the opinion of the lower court, is based on the fact that it does not appear that any interest was obtained by the administratrix on these sums, and that she kept the partnership funds in the bank separate from her own. I do not concur on this point.

VI. It had been the custom of the brothers, Henry and Edgar, composing the firm of Henry Ames & Company to keep everything in common and whether one brother drew from the firm for his private expense more than the other, made no difference in the adjustment, as all these sums were charged to "expense" and settled in that way at the end of the year. This custom

had acquired the binding force of a contract supported too, by a valuable consideration, to-wit, that whereas one brother might draw out, in any one year, more than the other, the latter might do the like the next year; and this in all probability was the current of such events, and led to the adoption of the custom in question. The act, then, of Edgar Ames in drawing out from the assets of the firm, after his brother's death the sum of $10,356.06 to make the amount drawn out, by him equal to that drawn out by his brother, was wholly unwarranted. And as no evidence was adduced as to the terms of the partnership contract between the brothers, it may not unreasonably be inferred from the long continued dealings between the partners what those terms were; and even if there was a written contract of partnership, this would not prevent such a custom from being engrafted thereon by the force of long usage. The maxim in this case applies: *Consuetudo societatis, est societatis lex.* The amount just mentioned constitutes a proper debit against the estate of Edgar Ames, and as the administratrix failed to charge him therewith, she ought to be charged with it on her final settlement of the partnership. The correctness of this result is not affected by the opinion of Wm. H. Scudder that it was proper for Edgar Ames to do as he did in this matter. Edgar Ames certainly would not have been permitted to have pursued this course in the life-time of his brother and *a fortiori*, he would not, after his brother's death.

VII. Edgar Ames was not entitled to commissions for his services in administering on the partnership estate. His administration on that estate was under the common law; he did not follow the statute, and even if he had given bond as required by the statute (secs. 57 and 60) he would not then have been entitled to commissions. This point was so ruled in the case of *Gregory v. Menefee*, 83 Mo. 413. The effect of the statutory requirement as to giving bond only being to impose the

burden of giving security on the surviving partner, but not bestowing any emolument upon him, leaving him, in this respect, as he was at common law, bound to discharge his duties in relation to preserving and caring for the partnership estate without extra compensation; duties which the common law implies are incident to the contract of co-partnership; duties which remain in the absence or disability of the co-partner, whether occasioned by causes of a temporary nature, as for instance sickness, or a permanent nature, as for instance, death. The authorities cited by counsel for exceptors fully sustain this view. This is especially true of *Berry v. Jones*, 11 Heisk. [Tenn.] 206; *Tilletson v. Tilletson*, 34 Conn. 336; *Beatty v. Wray*, 19 Pa. St. 516. In consequence of this view the administratrix should not have credited the estate of Edgar Ames with commissions on the partnership estate; and should be held to account for the amount withdrawn from the partnership estate for that purpose.

VIII. It is claimed by exceptors that there were unreasonable and improper expenditures in getting in and caring for the estate in administration. So far as this relates to extra pay of Crosby during the lifetime of Edgar Ames, that extra compensation has no basis on which to rest; he was employed by Edgar Ames after the death of Henry Ames, to take charge of the books of the estate of Henry Ames & Company, at a salary of twenty-five hundred dollars, and an interest in the profits of Edgar Ames' business. Having received what he contracted for, he will not be allowed after the death of Edgar Ames to charge the partnership of Henry Ames & Company two hundred and fifty dollars per month for the fourteen months he was in the employ of the partnership estate, at an agreed salary. This additional payment by the administratrix was, therefore, wholly gratuitous and she cannot take credit therefor. As to the residue of the charges for Crosby's services to

the partnership estate, he was receiving three thousand dollars a year for his services to that estate, and fifteen hundred dollars a year for services rendered at the same time to the estate of Edgar Ames, and also had sufficient time to engage in the pork business. Looking over this whole matter and to the compensation formerly received by Crosby, it would seem that the partnership estate should only be charged with one-half of the two salaries thus paid him. Such compensation appears to fall within the provisions of section 229. The employment of Kinnear by Crosby, to make out an interest account at the price of one hundred dollars, should not be charged against the partnership estate, as Crosby was paid for such services, and it was a part of his duty to perform them.

IX. The administratrix is not entitled to a credit for collecting rents on the partnership property. The commission of five per cent. allowed by the statute is in full for all "their services and trouble." The evidence shows that the collections were made by a clerk who also drew a salary paid out of the partnership estate. The exception to this credit was sustained by the circuit court, and is also sustained by this court. I concur for the reason that I do not regard the administratrix as authorized either to collect the rents or to demand compensation therefor.

X. In relation to the "Venango Oil Lands," the evidence and all the evidence, as to this matter is as follows: The witness: "October 31, 1865, is the time the account was opened." Q. "When was it paid for?" A. "Sept 27. Edgar Ames and Bart Able were the trustees for all parties; there were ten or twelve of them. Here is the journal entry on the books: Oil tract 28–32. Debtor to Edgar Ames, amount paid September 27. It was charged to him. That was, charged him $5,000. *Now they make it a partnership property by crediting*

*him with it and charging the tract itself.''* The ma-
jority of the court hold that upon the evidence above
set forth the property was partnership property.   I
cannot subscribe to this view.   It is clear to my mind
that originally the property was the individual property
of Edgar Ames, but that according to the evident mean-
ing of the witness, the books have been so manipulated
as to make that, partnership property, which theretofore
had been individual property.   For this reason the ad-
ministratrix should not receive a credit for" the loss to
Edgar Ames; but as the majority of the court think
otherwise, so it must be.

XI.   Under the provisions of the internal revenue
law, there was no tax on the income of estates of de-
ceased persons, and it devolved on the guardian of any
minor, or the distributee himself, if of age, to make re-
turn of his income tax as required by that law.   The
administratrix of the partnership estate did not occupy
any such position.   She was not the guardian or repre-
sentative of any minor, and, therefore, her payment of
that tax must be regarded as a mere voluntary payment
with which she alone is to be charged.   13 U. S. Stat. at
Large, section 18, page 282; 14 *Ib.*, p. 479, sec. 118.

XII.   It was admitted in the lower court by counsel
for the administratrix that a charge for ground rent paid
to Giddings was improper; and the twenty dollars paid
by Crosby to Peter Murray "to get rid of him" must
be looked at in the same way.

XIII.   There is another exception allowed by the
circuit court constituting the twelfth in the series, as to
the sum of $369.52, for which credit was improperly
taken.   This was admitted to be correct and will be
sustained here.

XIV.   And so, also, will the third exception be
sustained by the lower court, for double commissions
charged by the administratrix on $29,815.

XV.   There are a number of other items embracing

money received as proceeds of transactions of the part-nership, outside of the state, and from the partnership business conducted in the state of Mississippi. In her capacity as administratrix of the partnership, Lucy V. S. Ames is chargeable with all property of that estate which has come into her hands, no matter from what source derived. *Naylor v. Moffett*, 29 Mo. 126. Schouler on Ex'rs and Adm'rs, sec. 175. Under this head should also be embraced, the Anderson, Garrard, Satterlee and Fitzpatrick claims, and others of a similar nature.

The judgment is reversed and the cause remanded. Hereafter I will file a separate opinion. All concur in reversing the judgment, and remanding the cause.

### SEPARATE OPINION.

SHERWOOD, J.—I promised to write a separate opinion in this cause. Here it is:

I. Edgar Ames, in making his inventory of the partnership assets, omitted to include a large stock of goods which his firm had also in Vicksburg, Mississippi. Of this stock he made no appraisement, but carried on the business on his own account, as if the property were his own. An inventory of this stock of goods, taken July 1, 1866, which was but shortly before Henry Ames' death, showed that the stock was worth, at cost price, $78,300.68. The inventory price of the stock, according to Webb, was $71,825.99. Edgar Ames, on his brother's death, should have sold this stock of goods and accounted for the proceeds to the partnership estate. He could not be allowed to take the goods at a valuation.

The law on this subject is well settled. Thus, in *Sigourney v. Munn*, 7 Conn. 11, after a dissolution of the partnership, a bill was brought for taking an account of the partnership, and the committee to whom

the matter was referred made report that, in adjusting the account, they made an appraisement of the partnership property in order to determine its value; but this course was not approved, Hosmer, C. J., remarking: "A large amount of personal estate was on hand at the dissolution of the partnership, and in arriving at their result, the committee have taken a valuation by estimate, both of the real and personal estate. This proceeding is inadmissible. At the present I shall say nothing concerning the real estate, but as to the personal property, it may not, in this manner, be estimated. A partner cannot compel his co-partner to accept what, according to valuation, his interest may be worth. *Featherstonaugh v. Fenwick*, 17 Ves. 309. In every case in which a court of equity interferes, to wind up the concerns of a partnership, it directs the value of the stock to be ascertained in the way in which it can best be done, *i. e.* by a conversion of it into money." And in Parsons on Partnership, 445, it is laid down that: "It has sometimes been supposed that the surviving partners have a right to take all the effects and merchandise (after the debts are paid or secured) at a valuation. And undoubtedly there may be cases in which this would be a just and beneficial mode of settlement, and the court would, therefore, permit or order it. But it must be clear that they have no such right. Indeed, the right on this point is on the other side; for, it would seem, both from the reason of the case and on the authorities, that the representatives of the deceased have a right to require a sale of the effects as the only certain way of ascertaining their value and making a fair division." In *Kimball v. Lincoln*, 99 Ill. 578, it was ruled that a surviving partner could not buy from himself, and in *White v. Gardner*, 37 Texas, 407, it was held that by accepting the administration of the partnership estate, the surviving partner precludes himself from continuing the partnership business. Here, Edgar Ames did, in effect, become

both buyer and seller; did, in effect, buy at his own sale; and doing this shortly after an inventory of the price of the goods had been made, he ought to be held to have taken them at the price then fixed. His administratrix coming, in 1870, with her final settlement of the partnership estate, should not have been allowed to claim a large percentage for depreciation in the value of the goods, and establish such depreciation by the uncertain memory and contradictory testimony of witnesses as to the estimated depreciation years after the property was taken by Edgar Ames as his own, four years after the death of Henry Ames, and after the stock of goods had been destroyed by fire. If this position be correct, then the estate of Edgar Ames should be charged with the inventory price, at least, of the goods, with six per cent. interest thereon, from the time he took possession of the goods, and treated them as his own.

II. As to interest, on all claims the amounts of which the administratrix collected, but wilfully concealed and omitted to account for in her settlement, she should be charged interest with annual rests. *Williams v. Petticrew*, 62 Mo. 460. This is done upon the theory that executors and administrators *are trustees*, and to be treated accordingly, when their dealings with estates in their hands are subjected to that scrutiny which the law authorizes. On this point Judge Bliss appropriately says: "Any omission or concealment that wrongs the estate, must be considered as fraudulent, without reference to the motive that dictates it." *Clyce v. Anderson, Exr.*, 49 Mo. 37. This view of the law has since been endorsed by this court. *Houts v. Sheppard*, 79 Mo. 141; *Smiley v. Smiley*, 80 Mo. 44. In relation to interest on other sums in the hands of the administratrix ready for distribution, when she filed her first final settlement in 1870, she should either have obtained an order of distribution, or an order to loan the money until the further order of the court, and as she failed to

do this, she should be charged on such sums interest at the ordinary rate.

III.   Respecting the payment of the Lindell Hotel bonds by the administratrix without obtaining an order of court to do so, there was no exception on this score, or as to interest on such payment, filed in the probate court, and, therefore, any notice of these matters might well be declined ; but, inasmuch as the question of the propriety of such payment is indirectly involved ; inasmuch as exception is taken to commission on the payment of these bonds, and to the five thousand dollars *bonus* paid for their redemption before maturity, it is deemed proper to discuss the action of the administratrix in making such payment.   The authorities cited by counsel for the executors, and the evidence adduced, unquestionably establish that the real estate, on which the bonds constituted a lien, was owned by the brothers, Henry and Edgar, as tenants in common, and not otherwise.   The statute on the subject of redeeming land bound by mortgage is express; it provides that :   " If any person die, leaving land encumbered by mortgage or deed of trust, or any lien whatever, or owning any equity of redemption, or having mortgaged or pledged any personal property, and shall not have devised the same, or provided for the redemption thereof, by will, *the court shall have power, if in its judgment* it will promote the interest of the estate, and not be prejudicial to creditors, *to order the executor or administrator to redeem the same*, out of the personal assets of the estate, or to order the sale of other real estate to redeem such land or personal property so encumbered."   R. S., section 143.

Speaking of a kindred section, 138, that which relates to the completion of payments for land partially paid for by a decedent during his life time, this court, in *Lake, Adm'r, v. Meier, Adm'r*, 42 Mo. 389, said : " By G. S., Ch. 122, p. 496, sec. 2, it is declared ' that if

Scudder v. Ames.

any person die, having purchased real estate, and shall not have completed the payment, nor devised such estate; nor provided for payment by will, and the completion of such payment would be beneficial to the estate and not injurious to creditors, the executor or administrator, by order of the court, may complete such payment out of the assets in his hands, and such estate shall be disposed of as other real estate.' *This section contemplates something more than the mere allowance of an account to pass the title and complete the contract. The executor or administrator can use the assets to complete the payment, by order of court; but before the court can make the order it must examine into the affairs and condition of the estate, and determine whether it will be beneficial to the estate or injurious to creditors. A judicial determination of all the facts is necessary before the order can be made or the subject passed upon. There can be no pretense in the present case that any such examination was made, or that there was any order in compliance with the statute.*" And the judgment in that case was reversed, notwithstanding the action of the administrator had received the *subsequent sanction of the probate court.* It is quite obvious that "a judicial determination of all the facts is necessary before the order can be made or the subject passed upon;" as much so where the administrator *seeks to redeem land from incumbrance,* under section 143, as where he seeks, under section 138, to complete the payment of land previously partially paid for. In this case no such judicial determination was had, and no such order made. The act of the probate court in subsequently approving the course of the administratrix, was, therefore, as much unwarranted by law as if, without previous order, she had sold other real estate and applied the proceeds of such sale to redeem the land encumbered, in which case the probate court certainly would not be regarded as possessing power to ratify, by

its subsequent approval, such a sale ; and yet, the power of that court, *under the statute*, is no greater and no less. in the one case than in the other.

In *Evans v. Synder*, 64 Mo. 516, it was ruled that a subsequent approval by a probate court of a sale of land made by an administrator could confer on his act no retroactive validity ; and yet an order for a sale of land is no more necessary in that class of cases, requires. no more the exercise of judicial determination, than in the present instance. A similar ruling has been made elsewhere as to the invalidity of sales of real estate sought to be validated by subsequent orders of approval. *Lessee, etc., v. Park*, 4 Ohio, 5.

If a probate court can do what counsel for the administratrix claim it càn do, by subsequent sanction, what the law says shall be done on proper judicial determination and authorization, then this consequence follows : That an administrator may redeem real estate with the personal assets, or sell other real estate for the purpose of redeeming the land encumbered, and if he can obtain from the probate court a subsequent order approving his act, he will thus be enabled to *cut off and: preclude the right of appeal* which any creditor or other person interested would have under section 292, in the event of an order to redeem or to sell, etc., under section 143, being made ; for how can he appeal *before* the *order* is made ? And if he appeal *after* the approval of an act *not ordered* occurs, how shall he prevent the sale, or how prevent the application of the personal assets to the redemption of the land encumbered ? Does not this. illustration very clearly show that the position on this. point of counsel for the administratrix cannot be the law ? The *only instance* known to the administration law where the subsequent approval of an act is tantamount to a prior order, is that where an administrator pays a claim which has not been allowed, and gets credit for

such payment by producing such proof as will enable the claimant to recover in a suit at law. R. S., sec. 230.

This permission, *in a single instance*, of subsequent ratification of the prior act of an administrator, applies in all its force the maxim *expressio unius* to *every other* act done by him without the sanction of prior authority. No court has gone further, than has this court, in holding courts created by the statute within the confines of their legitimate authority. *Jefferson County v. Cowan*, 54 Mo. 234. In *Powers v. Blakey's Adm'rs*, 16 Mo. 437, Gamble, J., said : "It may be admitted that the exclusive original jurisdiction of controversies respecting the duties of administrators, is vested by the thirteenth section in the county courts. In fact it has been so decided by this court. *But the mode of exercising that jurisdiction is not left to the discretion of those courts to be applied in such cases as they may think proper. It is a jurisdiction to be exercised under the direction of the law.*"

And this court has been equally rigid in confining administrators to the pathway pointed out by the statute for them to pursue. Thus, in *Dullard v. Hardy*, 47 Mo. 403, the administrator, defendant, paid an allowed and classified claim before an order of distribution, and claimed credit for the payment, but the credit was rejected by the probate court, and such rejection was approved here, this court saying : "Hardy made the payment in advance of any order of payment and prior to the expiration of the first year's administration, and before it was known whether there would be assets applicable to the fifth class debts. It was upon that ground that the credit was disallowed. If an administrator pays claims of the fifth, or of any subsequent class, without an order, he acts at his own risk. Claims in these classes are not to be paid until the prior classes are satisfied. There may be nothing to apply to the fifth class, and, if anything, not sufficient to satisfy them in full, in which

case they must be paid *pro rata*.   If an administrator were permitted to pay allowed claims in his discretion and charge the estate, a portion of the creditors might be paid in full while others of the same class would get nothing.   No such practice can be tolerated."   And it is to be noted that the opinion of the court is not made to depend in any sense on the fact of any lack of assets to satisfy in full all demands of the fifth class, but simply upon the administrator having proceeded without authority.

Similar rulings have been made in regard to another. statutory provision, which declares that "executors and administrators may assign the notes and bonds of the estate to creditors, legatees and distributees, in discharge of the amount of their claims equal to the amount of such bond or note."   R. S., sec. 212. In reference to this section, although only *permissive* words are used therein, it was ruled that it precluded the transfer of notes and bonds of the estate except· where the statutory exigency had arisen, and that they could not be transferred but in the statutory mode and for statutory purposes.   *Stagg v. Linnenfelser*, 59 Mo. 336.   In *Chandler v. Stevenson*, 68 Mo. 450, the same point coming on for adjudication, it was said :   "An executor is but a trustee ; he receives nothing in his own right, but everything for the use of others.   The method for performing this trust, and the duties arising out of it, are regulated by the statute.   To give our sanction to any departure from the prescribed methods for the disposition of the assets of deceased persons, would result disastrously to all concerned in the proper administration of estates, and contravene the policy of the law."   These are fit words for the present occasion.

It will not do to say that *no harm has been done*, and therefore the probate court may heal by subsequent approval, an approval not authorized by statute, what that statute says shall be done upon *prior authorization.*

Such a perversion of the statute cannot be tolerated. Besides all that, where does the probate court, a court of limited powers and statutory origin, obtain jurisdiction to say and to determine that the assets of a *partnership estate may be* diverted to the betterment of *individual estates foreign* to that in the hands or charge of the administratrix of the partnership estate? The law of the organization of such probate court clothes it with no such powers. It only had jurisdiction over the partnership estate as to settling claims against *that estate;* that, and nothing more. As is pertinently said in *Coil v. Pittman's Adm'r*, 46 Mo. 57: "There is nothing to to be taken for granted here. * * * Where the statute has not devolved jurisdiction on the county court, we are not disposed to give it by implication." See also *Chamber's Adm'r v. Schaumberg*, 40 Mo. 482; Kelley Prob. Guide, section 123; *Baldwin v. Whitcomb*, 71 Mo. 651; *Riggs v. Cragg*, 89 N. Y. 479; *Davidsburg v. Ins. Co.*, 90 N. Y. 526; *Fiester v. Sheppard*, 92 *Ib.* 251.

We have always held such courts possessed no equitable powers. *Presbyterian Church v. McElhenney*, 61 Mo. 543; *Butler v. Lawson*, 72 Mo. 227; *First Baptist Church v. Robberson*, 71 Mo. 326. So that no redress requiring equitable interposition can be sought in that *forum;* and it would require interposition of that character, something of a more enlarged and comprehensive jurisdiction than a probate court is possessed of, in order to give relief to the administratrix on the ground that the unauthorized expenditures were beneficial to the property, and necessary to its protection, and that such expenditures were honestly made through mistake, etc. It has been urged that in any event the exceptors are estopped to object because they stood by and suffered the administratrix to proceed, etc.; but this position is fallacious for the reason that an administrator or ex-

ecutor of an individual estate *not acting in his own right* is not debarred from subsequent objection because he sees the surviving partners of the firm, or the administrator of the partnership estate, expending money of the firm, which expenditure he does not forbid. *Rennick, Adm'r, v. Emig*, 42 Ill. 342.

For these reasons no credits should be allowed the administratrix for any of the expenditures heretofore mentioned. She must seek her redress, if any she has, elsewhere. And the same line of remark applies to commissions on such expenditures. Commissions are incident alone to a faithful administration of the estate, *which the administrator has in charge;* this means an obedience to the law in such cases made and provided. *State to use v. Berning*, 74 Mo. 87, and cas. cit.

IV. As to credits for expenditures concerning real estate outside of this state, that is for taxes, commissions, etc., there can be no doubt that such expenditures were unwarranted. "It must be recollected," it is said *In re Partnership Estate of Henry Ames & Co.*, 52 Mo. 290, "that the administratrix derives her authority from the laws of Missouri alone, which have no extra territorial force. Under her letters she can administer the assets located in Missouri, but has no power to touch the Mississippi assets. They belong to another jurisdiction, over which the state of Missouri has no control." If an administrator is allowed credit for taxes paid abroad, such allowance must be based upon the theory that these payments are *lawful*. So that it may result that an administrator, guided by and relying upon the precedent set in this case, may exhaust the personal assets in this state in paying taxes on real estate in foreign jurisdictions, something with which he has no imaginable concern.

In my humble opinion such a theory of the law is only equalled in its world-embracing comprehensiveness

by the missionary hymn ; places an administrator in this state on the same pedestal where the oration of Philips places Napoleon the Great, making him, " proof against peril, and empowered with ubiquity."