G. A. STANDARD ET AL., Appellants, v. ELI C. LACKS, Respondent.

St. Louis Court of Appeals, March 8, 1887.

1. ADMINISTRATION—FINAL SETTLEMENT—EQUITY.—A final settlement in the probate court, made upon due notice, is equivalent to a final judgment, and can be vacated only for the causes for which other final settlements can be vacated.

2. ——— The administrator, having acted in good faith, and the complainants, having suffered no substantial injury by reason of certain irregular proceedings not in strict conformity to the statute, such irregularities are not sufficient ground for opening a final settlement.

3. ——— SURVIVING PARTNER—COMMISSIONS.—The allowance of commissions to a surviving partner upon partnership assets disbursed, and their receipt by him, though ground for valid exceptions, furnish no ground for vacating the final settlement, in a direct proceeding therefor.

APPEAL from the Iron County Circuit Court, JOHN L. THOMAS, Judge.

*Affirmed.*

ALEX. MARTIN, for the appellants : Only in case of intestate estates has the probate court power to make orders appropriating the estate for the support of minor children. Rev. Stat., sect. 255 ; *Richardson v. Frederitze*, 35 Mo. 266. The administrator of the partnership can pay only partnership debts, and has no right to commissions thereon. *Gregory v. Menefee*, 83 Mo. 413. The payments to the widow were all erroneous. She had no claims in the partnership estate. And the respondent is not entitled to credit for such payments. *The State ex rel. v. Leslie*, 83 Mo. 375.

J. W. EMERSON and I. M. DAVIDSON, for the re-

spondent: Mere erroneous acts or technical irregularities, or irregularities which have not resulted in advantage to the administrator, or in loss and wrong to the parties complaining, constitute ground for equitable interference in the setting aside of a final settlement judgment, had after due notice. *Jones v. Brinker*, 20 Mo. 87 ; *The State to use v. Roland*, 23 Mo. 97 ; *Barton v. Barton*, 35 Mo. 163; *Boly v. Lake*, 54 Mo. 200 ; *Sheets v. Kirtley*, 62 Mo. 421 ; *Miller v. Major*, 67 Mo. 247 ; *Smith v. Simms*, 77 Mo. 273 ; *Houts v. Shepard*, 79 Mo. 144. The allowance of commissions is not ground for a setting aside of the final settlement. *Crow v. Weidner*, 36 Mo. 412.

ROMBAUER, J., delivered the opinion of the court.

In December, 1873, John S. Varner and the defendant purchased a store, in Poplar Bluff, and carried it on as equal partners, until December 12, 1874, when Varner died, leaving a will, by which he devised and bequeathed to his widow, the plaintiff, Callie Varner, and to his three surviving children, all his real and personal property, in equal parts of one-fourth each.

It does not appear whether the widow ever accepted the provisions of the will. It does appear, by the pleadings, admissions, and other evidence, that immediately upon the death of Varner, the defendant qualified as surviving partner, under the statute, and that one I. B. Tubb qualified as executor under the will. It also appears that the plaintiff, Standard, is the duly appointed guardian and curator of the minor children of Varner. Also, that the defendant applied to the probate court for a sale of the partnership assets, at not less than their appraised value ; that he obtained such order, and purchased the assets himself at what he claims to have been their appraised value, which sale was approved by the probate court, and that, as surviving partner, he made his final settlement on May 15, 1878, accounting

for the balance in his hands, as shown by that and former settlements, and that such final settlement was not excepted to.

This action was instituted October 28, 1885, and is brought to vacate, surcharge, and falsify the final settlement thus made on the following grounds :

(1)   That in his first settlement the defendant fraudulently stated that the appraised value of the property which he bought was $4,109.90, whereas its true appraised value was $4,765.25, and as he himself became the purchaser at the first named sum, he thereby fraudulently concealed assets of the partnership, to the amount of $655.35, for one-half whereof, with interest, he is accountable.

(2)   That he fraudulently and illegally paid, out of partnership assets in his hands, demands allowed against the individual estate of. Varner, and also paid in the same manner sundry specified sums to Callie Varner, the widow, without warrant of law.

(3)   That he fraudulently and illegally took, in his various settlements, credits for commissions, upon amounts expended in administering the partnership estate.

The last two grounds are set out in the plaintiffs' statement, thus :

"2.  Objections were urged to items one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, sixteen, seventeen, eighteen, and nineteen, in the second settlement, and to items one, two, four, five, six, seven, eight, ten, and eleven, in the third and final settlement. It seems, from the accounts on file, that about all the debts of the partnership were paid at the making of the first settlement. Instead of distributing the assets thus left, according to law, the surviving partner, who was also administrator *de bonis non* of the individual estate of John S. Varner, went on and paid out the funds in his hands to the creditors of said estate. A portion of the

funds were paid out to the widow, and for the use of the children. These payments in the second final settlement were made upon allowances by the probate court, purporting upon their face to be claims against the individual estate, and not against the partnership estate. In the second settlement they amount in the aggregate to about $848.83, of which $477.80 seems to have been paid to the widow. In the third and final settlement he paid out about $228.35 to the widow.

"3. The respondent takes credit in his settlements for commissions and compensation as follows:

"In first settlement................$95 69.
"In second settlement............. 74 00.
"In third settlement............... 14 15.

$183.84."

It may be stated, in explanation, that J. B. Tubb, the executor of Varner, died, and thereupon the defendant became administrator *de bonis non* of the individual estate, also, and without making a formal transfer to himself as administrator of the individual estate, he paid the demands allowed against the individual estate out of the assets, belonging to said estate, in his hands as surviving partner, and paid, in a similar manner, the sums above mentioned to the widow of Varner, upon orders and with the sanction of the probate court.

Upon the first branch of the plaintiffs' complaint the evidence was as follows: The original of the appraisement was not produced. A copy from the probate records was offered in evidence by the plaintiffs, giving the items in detail, with the figures of $4,109.90 at the bottom, purporting to have been signed by D. S. Butts, J. F. Lane, and Wm. F. Neal, appraisers.

The plaintiffs also offered proof that the detailed figures added together foot up $4,685.86, or $535.96 in excess of the amount for which the property was sold to the defendant, and to that extent in excess of the amount for which he accounted. There was no further

testimony on that branch of the case offered by the plaintiff.

In explanation of this alleged discrepancy the defendant called two of the surviving appraisers, one of whom, J. F. Lane, testified as follows: "Helped appraise the partnership stock of goods. It was an old stock; many goods were shelf-worn, remnants, and some out of fashion. They were odds and ends which had been accumulating for years. We put the price of the articles opposite the articles as we went along, and afterwards made a reduction. I think Mr. Lacks paid a good round price for them, more than ought to have been paid if all parties had been living." "The appraisers had a consultation after we ascertained the aggregate amount of the list, and we agreed upon considerable deduction and fixed upon an amount which we set down and signed as the appraisement of the entire stock, which was $4,109.90. This amount is not the sum total of the addition of columns of the appraisement list. We made calculations of the aggregate amount on separate pieces of paper, and then arrived at a sum which we agreed upon as the true appraised value of the stock, and that sum was not intended to be the sum arrived at by the addition of the columns. We made a deduction from the amount found by the addition of the columns so that the aggregate amount of appraisement, as agreed upon by the appraisers, was $4,109.90, and that is the amount we wrote at the end of the appraisement list, and signed at the time."

The defendant was also sworn on his own behalf, and testified as follows:

"I had the stock appraised by D. S. Butts, W. F. Neal, and John F. Lane, and they appraised it at the sum of $4,109.90. That was more than the stock was worth. Isaac B. Tubb was administrator of Varner's individual estate, and he drew up the report of sale to me at the appraised price of $4,109.90, presented it to the probate court, and had it approved. The amount I

paid for the stock was perfectly well understood by Mr. Tubb, the executor, and by the probate court, and it was entirely satisfactory. I would not have paid four thousand six hundred dollars for the goods; I would not have paid for or taken the stock at any higher price than the amount I did, $4,109.90.

"The appraisers first figured up the aggregate sum or estimate, and then made a reduction from that as the true appraisement, as some of the stock had been on hand a great while, and had depreciated in value. It was an old store we bought out, which had been running many years."

It thus appears that the trial court was justified in finding, as it did, that the proof failed to show any fraudulent concealment of assets. On the testimony, as preserved in the record, we certainly must come to the same conclusion.

It is furthermore evident that the court was right in dismissing the plaintiffs' bill, because, the first charge being thus disposed of, there was nothing left in the residue of the plaintiffs' bill, which, under the evidence adduced, would warrant the opening of the defendant's final settlement. "It was never held that, charging merely that the administrator had obtained illegal allowances in his favor, in his settlements made with the county court, was ground for applying to the chancery court, to have such allowances set aside and vacated. It must be charged that the allowances were procured by fraudulent and false means and pretenses, unjustly, to the injury of the estate, and parties interested." *Jones v. Brinker*, 20 Mo. 88, 89. That final settlements are judgments, binding on all parties, and can be vacated in equity only for reasons for which other final judgments may be vacated, has been established in this state by a long series of uniform adjudications. *The State to use v. Roland*, 23 Mo. 97, 98; *Barton v. Barton*, 35 Mo. 162, 163; *Boly v. Lake*, 54 Mo. 200, 201; *Sheetz v.*

*Kirtley*, 62 Mo. 417, 420, 421 ; *Miller v. Major*, 67 Mo. 247 ; *Smith v. Sims*, 77 Mo. 272.

Now, in the case at bar, there is no evidence whatever that, in anything which the administrator did, he was actuated by any fraudulent motive, nor is there any proof that his acts were injurious to the claimants. His direct payment of claims allowed against the individual estate, out of funds in his hands belonging to said estate, but not formally paid over to himself as administrator *de bonis non*, was an irregularity, which might have been corrected when he made his settlements. But as it is not disputed that these claims were valid demands against the individual estate, no one is injured, because the plaintiffs claiming under the will, are entitled to the residue only after the discharge of such debts.

Payments made by him, under the orders of the probate court, to the widow, for the support of herself and children, out of funds forming part of the partnership estate, were irregular. But the widow certainly can not complain, nor can the plaintiff children, because, while under the ruling in *Richardson v. Frederitze* (35 Mo. 267), the probate court has no power to order the payment of money for the support of minors, contrary to the provisions of a will ; for all that appears in this case the payments were not made contrary to the provisions of the will, the will itself not being in evidence. Thus it will be seen that, so far as these items are concerned, the plaintiffs' case fails, because there is a failure of proof, not only of fraud, but also of injury.

The only remaining question is, whether the settlement should be re-opened for the purpose of rejecting the items claimed by the administrator for commissions. These items, according to the plaintiffs' own statement, amount to $183.84. The supreme court held, in *Gregory v. Menefee* (83 Mo. 413), that a surviving partner is not entitled to commissions for administering on the

partnership estate. The same court said, in *Houts v. Shepherd* ( 79 Mo. 141 ), which, however, was a case of gross fraud and misconduct, that "any omission or concealment that wrongs the estate, must be considered as fraudulent, without reference to the motives that actuated it."

There was no concealment in the present case. The allowances for commissions were made by the probate court, with a full knowledge of all the facts, and in conformity with the law as then understood. If erroneous, the error should have been corrected on exceptions and appeal, as was done in *Gregory v. Menefee* (*supra*). To hold that a final settlement can be re-opened for such cause, would probably re-open every final settlement made of partnership estates in this city, within a period not barred by the statute of limitations. Beyond this, it appears, by the uncontroverted testimony of the administrator, that in case of a re-opening of the settlement, he can claim an additional credit not claimed or allowed in any of his settlements, exceeding his credit for commissions.

The judgment is affirmed. All the judges concur.